**STATE of Missouri, Respondent,**

v.

**Gregory A. HUDSON, Appellant.**

**No. WD 52960.**

Missouri Court of Appeals, Western District.

June 24, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 1997.

Application to Transfer Denied Sept. 30, 1997.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl A. Caponegro, Assistant Attorney General, Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Gregory A. Hudson was convicted of murder in the first degree, § 571.020.1, RSMo 1994, and armed criminal action, § 571.015, RSMo 1994. Mr. Hudson was sentenced as a prior, persistent offender to consecutive terms of life imprisonment without probation or parole and life imprisonment, respectively. He claims the trial court erred when it: (1) overruled his motions for acquittal at the close of the state's and all the evidence; (2) chastised defense counsel in the presence of the jury during cross examination of the state's fingerprint expert; and (3) sustained the state's objection to defense counsel asking if the victim and Mr. Hudson were friends. The judgment of the trial court is affirmed.

## STATEMENT OF FACTS

On November 14, 1994, firefighters from Kansas City, Missouri, were sent to a truck fire located at Tenth and Olive. A deceased man, Roderick Morgan, was discovered laying in the seat of a water department truck. He had been shot. Upon opening the truck door, police observed a spent shell casing fall from inside the truck.

Kansas City, Missouri detectives interviewed Bruford Logan who lived near the scene. Mr. Logan reported that he saw a water department truck stop on his street and a blue Cadillac drive up behind it. A tall, slender, brown-skinned man exited the car and went to the water truck. Mr. Logan said he heard three or four shots and saw the man return to the Cadillac and leave.

Police obtained seven shell casings from the scene—three on the ground, two on the driver's seat, one on the victim and one on the truck's floorboard. A spent bullet was located in the right door interior. Detectives also lifted a latent palm print from the exterior left door above and forward of the chrome handle.

A search warrant was executed on November 18, 1994, at Mr. Hudson's home. Two shell casings were recovered from the driveway of the house. Mr. Hudson's brother, Claude Hudson, present at the search, explained that the casings were a result of Mr. Hudson's firing shots into the air.

Police analyzed the bullets and shell casings and concluded that the three bullets recovered from the victim and the bullet and casings taken from the truck as well as the two casings from Mr. Hudson's home were fired by the same .40 caliber weapon. Police also examined the latent palm print found on the truck and concluded that it was from Mr. Hudson's left palm. The state's fingerprint expert testified that rain would have washed away the print. Rain fell on November 13, 1994, the day before the murder and the water truck was stored in an outdoor lot exposed to the elements.

Mr. Hudson did not testify but presented an alibi defense through various witnesses.

## I. SUFFICIENT EVIDENCE EXISTS TO SUPPORT THE CONVICTIONS

■ Mr. Hudson's first claim asserts error in the trial court's denial of his motions for directed verdict at the close of the state's case and at the close of all the evidence. Because Mr. Hudson presented evidence after the close of the state's case, he waived

any claim of error arising from the denial of his motion for a directed verdict at the close of the state's evidence. *State v. White,* 798 S.W.2d 694, 696–97 (Mo. banc 1990). Review is limited, therefore, to Mr. Hudson's claim that the trial court erred in failing to grant his motion for judgment of acquittal at the close of all the evidence.

Mr. Hudson complains that the state failed to present sufficient "objective, independent evidence" or that the state failed to "forge a sufficient chain of circumstantial evidence" that proves he was guilty of first degree murder and armed criminal action beyond a reasonable doubt.

■ In all criminal convictions reviewed by an appellate court for sufficiency of the evidence, the reviewing court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences unfavorable. *State v. Silvey,* 894 S.W.2d 662, 673 (Mo. banc 1995). Appellate review is limited to determining whether sufficient evidence was presented from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.; State v. Williams,* 623 S.W.2d 552, 553 (Mo. 1981). The evidence is not reweighed nor is the reliability or credibility of witnesses reassessed. *State v. Idlebird,* 896 S.W.2d 656, 661 (Mo.App. W.D.1995). This court's function, therefore, is to determine whether the evidence was sufficient to support the verdict and not to reweigh the evidence. *State v. Davis,* 936 S.W.2d 838, 843 (Mo.App.1996). A jury may convict entirely from circumstantial evidence, therefore, if the evidence reasonably convinces the jury of the defendant's guilt beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 408 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). The court in *Grim* determined that circumstantial evidence cases need not be held to a higher standard than direct evidence cases. The court resolved that "[i]f a jury is convinced beyond a reasonable doubt, so long as the evidence meets the minimal appellate standard required by due process, we need not disturb the result simply because the case depended wholly, most-ly, or partially upon circumstantial proof." *Id.* at 406.

■ The evidence shows that a blue Cadillac with Kansas plates was driven up behind the victim's water truck moments before the shooting. A man exited the car, approached the water truck, shot the victim, returned to his car, and sped away. Mr. Hudson's girlfriend owned a blue Cadillac and papers found in the car linked Mr. Hudson to it. Shell casings found in the driveway of Mr. Hudson's home and those found at the murder scene were fired by the same .40 caliber handgun. Mr. Hudson's brother told police that Mr. Hudson had fired a weapon that produced the spent shell casings found in Mr. Hudson's driveway with markings that matched those found at the murder scene. Mr. Hudson's left palm print was found on the left exterior door of the truck in which the victim was shot. The truck was stored outside and rain had fallen the day before the murder. The amount of rain that fell would have caused the erasure of the palm print had it been placed on the truck before the rain.

A jury could reasonably infer from the evidence that Mr. Hudson drove his girlfriend's Cadillac to the murder scene, drove up behind the water truck, parked the vehicle, got out of the Cadillac and approached the truck in which the victim sat with a .40 caliber weapon, placed his left palm on the left door panel, shot the victim, and left. The evidence was sufficient to convict. Mr. Hudson's first claim of error is denied.

## II. TRIAL COURT DID NOT COMMIT PLAIN ERROR IN SAYING TO DEFENSE COUNSEL, "THIS IS RIDICULOUS"

Mr. Hudson claims the trial court's comment before the jury that defense counsel's inquiry of the state's handwriting expert was "ridiculous" violated his right to due process and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 & 18(a) of the Missouri Constitution. He asserts that the judge "failed to maintain his impartiality and neutrality, and his remarks may have prejudiced the jury against [him]."

He claims that the judge's comments imparted a hostile attitude by the judge toward defense counsel. The essence of Mr. Hudson's claim is that the trial court's comment suggested to the jury that the expert witness's conclusion that the source of the palm print on the truck in which the victim was shot was Mr. Hudson's hand should not be questioned. The following is the colloquy between defense counsel and police fingerprint expert during cross-examination of the witness:

Q: What I'm trying to discover is how many possible similarities are there between two sets of prints in your opinion?

A: Oh, I've—some examinations I've conducted hand prints where if I've had the full print, I've had anywhere from a hundred to two hundred points of comparison.

Q: So were you to have a possibility of—let's say of 100 points rather than 200, you would consider 12 points of similarity a positive or a match?

A: That is correct.

Q: Okay. So therefore, where you find less than 10 percent of similarities between points in print A and print B you would consider that a match; is that a fair statement?

A: I'm not sure exactly what you're asking there sir.

Q: Okay. I believe you've indicated that a print can have as many as 100 or even 200 points of similarities; is that correct?

A: That is correct, it's possible. Depends on the latent print, what is there.

Q: And the standard that you use is when you find eight to twelve points of similarity, you consider that a match; is that correct?

A: That is correct.

Q: Well, eight to twelve, let's say of 100, that's approximately—of 100 points of similarity, if you can find approximately 10, then you consider that a match; is that correct?

A: It depends on if there's a possibility of a hundred points in that particular comparison.

Q: Right. Is that correct?

A: That would be correct, yes.

Q: So while you have 10 points of similarity and 90 points of dissimilarity you would consider that a match; would that be correct?

A: That would not be 90 points of dissimilarity. That particular part of the print may not be there.

Q: Well, to be fair, I want to revisit my former question. I believe you indicated that where you find 10 to 12 points of similarity with the possibility of 100 to 200 points of similarity that you consider that a match. Is that an accurate statement?

A: Yes, sir.

Q: So if you find some 10 percent of the possible matches and 90 percent of possible dissimilarities, you would consider that a match; is that correct?

A: Sir, dissimilarities are not what is considered in that. When I'm examining—

Q: Excuse me.

THE COURT: You're interrupting her and you're misleading her. She never said 90 percent dissimilarity. You keep trying to say that; she's never said that. This is ridiculous.

[DEFENSE COUNSEL]: May we approach the bench?

(Counsel approached the bench and the following proceedings were had:)

[DEFENSE COUNSEL]: I'm trying to get an answer from her.

THE COURT: I think you have gotten an answer. That's ridiculous, absolutely is.

[DEFENSE COUNSEL]: Thank you, Your Honor.

■ Objection to the comments of the court must be made when they occur or the error will be considered waived unless the effect is so prejudicial that it cannot be removed. *State v. Jones*, 921 S.W.2d 28, 32 (Mo.App.1996); *State v. Ray*, 852 S.W.2d 165, 170 (Mo.App.1993). Mr. Hudson concedes that defense counsel did not object at trial, and, thus, this claim is only entitled to plain error review under Rule 30.20. Rule 30.20 provides that plain errors affecting substantial rights may be considered in the discretion of an appellate court when the court finds that manifest injustice or miscarriage of

justice has resulted therefrom. *State v. Parker,* 856 S.W.2d 331, 332–33 (Mo. banc 1993).

▮ Plain error review should be used sparingly, and plain error review does justify appellate review of all alleged trial errors not preserved. *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983). Plain error review imposes a greater burden on appellant than when the issue is otherwise preserved. *State v. Bradshaw,* 845 S.W.2d 143, 144 (Mo. App.1993). Appellant must demonstrate that the error asserted so substantially affected the rights of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Hadley,* 815 S.W.2d 422, 423 (Mo. banc 1991). Manifest injustice depends upon the particular facts and circumstances of each case. *State v. Zindel,* 918 S.W.2d 239, 241 (Mo. banc 1996).

▮ A defendant is entitled to absolute impartiality by the trial judge. *State v. Fleer,* 851 S.W.2d 582 (Mo.App.1993). A judge must maintain a neutral attitude and avoid any demonstrated hostility which might impair the appearance of impartiality. *State v. Clay,* 763 S.W.2d 265, 268 (Mo.App.1988). A trial judge must not indicate by his comments or questions his opinion of evidence in the case. *State v. Moseley,* 705 S.W.2d 613, 616 (Mo.App.1986). The ultimate issue is whether the trial court's conduct prejudiced the jury against defendant thereby depriving defendant of a fair and impartial trial. *State v. Thomas,* 791 S.W.2d 861, 862 (Mo.App. 1990); *State v. Koonce,* 731 S.W.2d 431, 441 (Mo.App.1987). Whether prejudice occurred depends on the context and the words in each case. *Koonce,* 731 S.W.2d at 441. No error occurs if the trial judge does not express an opinion as to the nature, content or truthfulness of the evidence. *Id.* Comments by a judge depend largely upon tone of voice, facial expressions and other similar factors which give content to the trial episodes and the rulings thereon. Those factors are not reflected in the cold record on appeal and the reviewing court must largely defer to the trial court's superior vantage point to appraise the trial situation. *State v. Reed,* 640 S.W.2d 188, 197 (Mo.App.1982).

▮ A trial judge may correct counsel, when necessary, as long as it is not done in a contemptuous manner. *Thomas,* 791 S.W.2d at 863; *State v. Mitchell,* 693 S.W.2d 155, 160 (Mo.App.1985). The factors used to determine the propriety of any comment include whether the trial judge volunteered the comment, whether the comment was made in response to an objection as part of the court's ruling, whether the comment was made in the jury's presence and whether the jury could have construed the comment to prejudice the defendant. *Thomas,* 791 S.W.2d at 863.

▮ The trial judge's statements did not violate his judicial duty to remain impartial. He neither expressed an opinion on the evidence nor commented on Mr. Hudson's guilt or innocence. Trial judges are not stone statues. When trial counsel propound irrelevant or misleading questions to a witness to affect absurdity, reaction by the trial judge is understandable. Concern for the import on the jury of remarks by the trial judge as a result of questions or conduct of trial counsel dictates restraint, however. Although the trial court's employment of the word "ridiculous" in characterizing the defense counsel's cross examination within the jury's hearing is not encouraged, its usage did not rise to a "manifest injustice." As other courts have recognized, the use of the word "ridiculous" is not necessarily prejudicial in and of itself:

> In *Cooper v. United States,* 403 F.2d 71, 73 (10th Cir.1968), we held that there was no merit to the contention that the trial judge's remark that defense counsel's comment on an item he had introduced into evidence was "ridiculous" constituted such prejudice as to deny the accused a fair and impartial trial. We there observed:
>
>> While indications in the presence of the jury that statements of the defense counsel are ridiculous, are not to be encouraged, such conduct does not constitute reversible error. Indeed, that incident and others discussed above, were no more than displays indicative of a firm control of the proceedings and fall well within the reasonable bounds within which a trial judge may act. [citations omitted].

*U.S. v. Shelton,* 736 F.2d 1397, 1404 (10th Cir.1984). *See also Morreale v. Downing,* 630 F.2d 286, 290 (5th Cir.1980); *U.S. v. Bray,* 546 F.2d 851, 858 (10th Cir.1976)(hold-

ing that a judge's remark characterizing defense counsel's statement as "ridiculous" did not give rise to reversible error).

The trial court's comments were directed at controlling the court proceedings. Although it appears defense counsel was intent on attacking the science of fingerprinting, abusing or misleading a witness or distorting testimony is not permissible. The trial court was within its allowable discretion in addressing those issues as reflected in the record. No manifest injustice occurred as a result of the court's comments.

Point II is denied

## III. TRIAL COURT DID NOT COMMIT PLAIN ERROR IN DISALLOWING TESTIMONY THAT MR. HUDSON AND VICTIM WERE FRIENDS

 Mr. Hudson's final point of error is directed at the trial court's sustaining the state's objection to a question posed to Claude Hudson as to whether the victim and Mr. Hudson were friends. No mention of this alleged error appears in the motion for new trial, and, therefore, the error is waived. *State v. Fleischer,* 873 S.W.2d 310, 314 (Mo. App.1994). Mr. Hudson's claim is only reviewable for plain error under Rule 30.20. Mr. Hudson claims the evidence of motive was important and relevant in light of his alibi defense and the fact the state presented no evidence on motive. He claims that friendship with the victim would show an absence of motive which in turn would tend to reflect his innocence, citing *State v. Hyde,* 234 Mo. 200, 237, 136 S.W. 316, 326 (1911). Although friendship evidence may be relevant to the issue of motive,[1] this court does not discern any manifest injustice in the trial court's disallowance of testimony regarding an alleged friendship between the victim and Mr. Hudson. Point III is denied.

The judgment of conviction is affirmed.

All concur.

---

1. The court is aware of no study or finding concluding that individuals are necessarily less

likely to murder a friend.