STATE of Missouri, Respondent,

v.

Terry A. WOODS, Appellant.

No. WD 55055.

Missouri Court of Appeals,
Western District.

Jan. 12, 1999.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Karen L. Kramer, Assistant Attorney General, Jefferson City, for respondent.

Before ULRICH, P.J.; SMART, J. and EDWIN H. SMITH, J.

ULRICH, Presiding Judge.

Terry Woods appeals his convictions following a jury trial for one count of second degree assault and one count of first degree

trespassing, sections 565.060 [1] and 569.140 respectively. He claims the trial court erred in (1) overruling his motion for judgment of acquittal and in sentencing him upon his conviction of first degree trespass because there was insufficient evidence from which a rational juror could have found he "knowingly entered unlawfully" into Martin Tong's house, (2) refusing to instruct the jury on his belief in the legality of his conduct, and (3) sustaining the State's objection and precluding him from playing the police tape of the 911 calls made on the night of the incident. The judgment of convictions is affirmed.

## FACTS

Terry Woods was charged by information on February 10, 1997, with one count of second degree assault and one count of first degree trespassing, sections 565.060 and 569.140 respectively. The case went to trial on July 21, 1997, in the Circuit Court of Jackson County, Missouri, and Woods was convicted of both charges. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial:

Woods worked as a bounty hunter for Arrowhead Bonding Company. On the night of January 2, 1997, he was looking for an individual named William Hernandez. Hernandez had been charged with an offense and was free on bail. Arrowhead, as the company posting Hernandez's bond, provided Woods with Hernandez's home address and the address of Hernandez's girlfriend. Woods, along with his partner, Donnell Phillips, first proceeded to Hernandez's home address but found the doors padlocked. The two men then went to a home at 4120 East 6 [th] Street where, according to what they had been told, Hernandez's girlfriend lived.

When they arrived, Phillips went to the front door of the house and Woods went to the rear of the house. Martin Tong, a Sudanese immigrant, answered the door and asked Phillips what he wanted. Phillips stated that he wanted "Cassandra," and Tong stated that he did not "know that person." Phillips then questioned Tong about William Hernandez. Tong stated that he did not know Hernandez. Tong further explained

that his name was Martin Tong and that he lived in the house with "John." Phillips then asked whether the address of the house was 4120 East 6 [th] Street, and Tong responded that Phillips was at the correct address but that he did not know the people he was looking for.

After hearing voices, Woods went to the front of the house. When Tong saw Woods coming up the stairway to the porch with a gun, he believed Woods and Phillips intended to rob him, so he slammed the door, locked it, and ran to the phone to dial 911. Tong had just begun dialing when Woods and Phillips kicked the door down. Tong then dropped the phone and ran down to the basement to hide. Hearing Woods and Phillips coming down the basement stairs, Tong decided to change his hiding place, attempting to conceal himself behind a brick column.

As Tong moved to the brick column, Woods fired his weapon. Tong was struck in his right foot and wrist. Tong then ran to the basement window and grabbed a metal pipe to defend himself. Woods kept shooting as he approached Tong. When Tong was shot in the ear, Woods and Phillips grabbed him and attempted to pull him up the stairway. At some point in the struggle, Tong hit Woods with the pipe, and the basement light went off. Tong then ran back down stairs, broke a basement window, climbed out of the house though the window, and ran to his aunt's house to call the police.

Woods and Phillips saw Tong running from the house and attempted to find him, but they were unsuccessful. They then returned to Tong's house to call the police. Officer Gary Coots of the Kansas City Police was on patrol around 11:00 p.m. on the night of January 2, 1997, when he received a call to proceed to 4120 E. 6 [th] Street to investigate a disturbance involving bondsmen. Upon arriving at the scene, Officer Coots observed Woods and Phillips, dressed in dark clothing, standing in the street. Woods and Phillips directed Officer Coots into the house.

Woods agreed to come down to the police station and give a statement. He arrived at

1. All statutory references are to RSMo 1994 un-    less otherwise indicated.

the station about 4:55 a.m., was read his *Miranda* rights, and signed a waiver form. Woods told the officers that when Tong slammed the front door, he believed Tong was hindering their efforts to seize Hernandez and that Tong might be hiding Hernandez in the house. Woods stated that he and his partner were therefore forced to open the door by kicking it down. Woods also told the police that Tong attempted to strike him with the metal pipe in the basement and that he was forced to fire his gun in order to cease the assault.

At trial, defense counsel asked to play the taped recording of the police 911 calls made by Phillips, Tong, and a neighbor arguing that the tape was *res gestae* and illustrated that Phillips and Woods were acting in a professional manner. The trial court concluded that the tape was not relevant or "probative of anything" because Phillips, not Woods, made the call. The tape and a transcript thereof were submitted as a part of defense counsel's offer of proof.

At the close of all the evidence, the jury found Woods guilty of second degree assault and first degree trespassing, assessing a punishment of six years imprisonment for the former, and six months in the county jail for the latter. The trial judge ordered the sentences to run concurrently. This appeal followed.

## DEFENDANT'S POINTS ON APPEAL

■ In his first point on appeal, Mr. Woods claims the trial court erred in overruling his motion for judgment of acquittal and in sentencing him upon his conviction of first degree trespass because insufficient evidence was presented from which a rational juror could have found he "knowingly entered unlawfully" into Martin Tong's house. In all criminal convictions reviewed by an appellate court for sufficiency of the evidence, the reviewing court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences unfavorable. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993); *State v. Hudson,* 950 S.W.2d 543, 546

(Mo.App.1997). Appellate review is limited to determining whether sufficient evidence was presented from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Williams,* 623 S.W.2d 552, 553 (Mo.1981). The evidence is not reweighed nor is the reliability or credibility of witnesses reassessed. *Id.; State v. Idlebird,* 896 S.W.2d 656, 661 (Mo. App.1995).

Under section 569.140, a person commits the crime of first degree trespass if he "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure." § 569.140.1. To find Mr. Woods guilty of first degree trespass, the jury was required to find that Mr. Woods knew he was entering 4120 East 6th Street, Mr. Tong's home, unlawfully. Mr. Woods contends that the evidence is insufficient to support such a finding because at the time he entered the residence, he believed he was operating under the protection and the authority of a Supreme Court Ruling; therefore, he did not believe he was entering unlawfully.

As a bounty hunter, Mr. Woods possessed a bond enforcement agent identification card that included the following statement on the back:

When bail is given, the principal is regarded as delivered to the custody of his sureties. Their Dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize and deliver him up in his discharge, ... and if that cannot be done at once they may in person or by agent. They may pursue him into another State; may arrest him on the sabbath; and, if necessary, *may break and enter his house for that purpose.* The seizure is not made by virtue of new process. None is needed. It is likened to the re-arrest by the Sheriff of an escaping prisoner. (Emphasis added).

The statement is from the United States Supreme Court opinion of *Taylor v. Taintor,* 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287 (1872). Mr. Woods contends that he believed, based on the above statement, that he had the right to enter into the residence to seize William Hernandez; therefore, the

*mens rea* requirement for first degree trespass was not satisfied in that he did not "knowingly" enter the house unlawfully.

The statement on Mr. Woods' bondsmen card asserts that a bounty hunter may pursue a person who has breached the conditions of his bond to arrest him and that such pursuit may include, if necessary, breaking and entering *the bond jumper's* house. The evidence presented showed that Mr. Woods believed the residence at 4120 East 6th Street belonged to either Chastity Stevens, William Hernandez's girlfriend, or Martin Tong. Mr. Woods does not contend, and there is no evidence to show, that he believed at any time the residence belonged to William Hernandez. Therefore, reasonable jurors could have found that Mr. Woods' belief that the *Taylor v. Taintor* statement allowed him to lawfully break and enter 4120 East 6th Street was not reasonable and that he did knowingly enter the residence unlawfully. Because sufficient evidence of Mr. Woods' knowledge of the illegality of his conduct was presented from which reasonable jurors could have found Mr. Woods guilty beyond a reasonable doubt of first degree trespass, the trial court did not err in overruling Mr. Woods' motion for judgment of acquittal and in sentencing him upon his conviction. The point is denied.

■ In his second point on appeal, Mr. Woods contends the trial court erred in refusing to instruct the jury on his belief in the legality of his conduct. The instructions that Mr. Woods requested the court give to the jury conform to MAI–CR 3rd 308.16 and 323.56 as modified by 308.16, which address the defense of ignorance or mistake of the law. The Notes on Use for 308.16 state that the instruction will be given only when evidence supporting the defense is presented, and the burden of injecting the issue of the belief in the legality of conduct is the defendant's. MAI–CR 3rd 308.16 Notes on Use.

■ Section 562.031 addresses ignorance or mistake of the law and provides the requirements for the defense. Under 562.031, a mistaken belief of law is a defense if the mistaken belief is (1) reasonable and (2) based on the defendant's reasonable reliance on an official statement of the law contained in an opinion or order of an appellate court. *See* § 562.031. Mr. Woods contends the evidence shows he mistakenly, but reasonably, believed he could enter into the residence based on the statement on his bondsmen card from *Taylor v. Taintor;* therefore, he properly injected the mistake of law defense under section 562.031 at trial, and the instructions should have been given by the court.

As stated above, the evidence presented in this case shows that the defendant's alleged belief in the legality of his conduct based on the statement on his bondsmen card was not reasonable in that the statement only authorized Mr. Woods to enter William Hernandez's home. Mr. Woods' presented no evidence showing that he believed the residence at 4120 East 6th Street was William Hernandez's. Therefore, his reliance on the statement to break and enter into a home that he knew was not the Hernandez's was not reasonable as required under section 562.031. Because no evidence supported the defense under section 562.031, the court was not required to give Mr. Woods' proposed instructions to the jury. The point is denied.

■ In his final point on appeal, Mr. Woods contends the trial court erred and abused its discretion in sustaining the State's objection and precluding him from playing the police tape of the 911 calls made on the night of the incident. Mr. Woods argues that because the tape was not being offered for the truth of its statements, but rather to show the emotions of the callers, it was *res gestae* and was relevant to show the atmosphere around the incident.

Three calls are recorded on the tape. The first call is from a citizen who reported hearing shots in the 4100 block of East 6th Street and having seen two men walking slowly down the street as if they were looking for someone. The next call is from Donnell Phillips who identified himself as a bounty hunter and stated that a suspect had just run down the street with a gun and that he needed the police to come and secure the residence. The final call is from Martin Tong reporting that he had been attacked and shot. There are also over-the-air police dispatches re-

garding the phone calls. The state objected to playing the call from Donnell Phillips and the police dispatches both on hearsay grounds and because the evidence was irrelevant and potentially confusing to the jury. The court determined that the calls were not probative of anything and not relevant and, therefore, sustained the state's objection.

For evidence to be admissible, it must be relevant, logically tending to prove or disprove a fact in issue or corroborate relevant evidence that bears on the principle issue. *State v. Weaver,* 912 S.W.2d 499, 510 (Mo. banc 1995). The trial court is vested with broad discretion as to the admission of evidence; therefore, the appellate court will reverse only if that discretion was clearly abused. *State v. Morrow,* 968 S.W.2d 100, 106 (Mo. banc 1998); *State v. Collins,* 962 S.W.2d 421, 424 (Mo.App.1998).

Mr. Woods contends the tape, which conveys the emotional state of the callers, would have shown the jury his emotional state and presented to the jury members the atmosphere surrounding the incident thereby providing a basis to resolve the conflict between his testimony and Mr. Tong's testimony regarding what occurred in the basement of the residence. Primarily, Mr. Woods desired to introduce the call placed by Donnell Phillips to show the manner in which he and Mr. Phillips were conducting themselves to lend credibility to his claim of self-defense. The emotional state of Donnell Phillips, to the extent it is apparent in his 911 call approximately twenty minutes after the incident occurred, does not demonstrate Mr. Woods' emotional state at the time he entered the residence and shot Mr. Tong. For this reason, the trial court concluded that Mr. Phillips' call was not "probative of anything" and not relevant. The trial court was vested with the discretion to admit or deny such evidence, and that discretion was not clearly abused. The point is denied. The judgment of convictions is affirmed.

All concur.