STATE of Missouri, Respondent,

v.

Jerry W. HOUSTON, Appellant.

No. WD 61827.

Missouri Court of Appeals,
Western District.

July 27, 2004.

Rosalynn Koch, Asst. Public Defender, Columbia, MO, Elizabeth Unger Carlyle, Lee's Summit, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

Before LOWENSTEIN, P.J., EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

Jerry Houston appeals the judgment of his conviction, after a jury trial in the Circuit Court of Cole County, of statutory sodomy in the first degree, § 566.062.[1] He was sentenced, as a prior offender, § 558.016, to thirty years in the Missouri Department of Corrections.

The appellant raises two points on appeal. In point I, he claims that the trial court plainly erred "in injecting itself in the proceedings numerous times to express its frustration and aggravation with [the appellant] and his cross-examination

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

and in informing the jury of his incarceration" because, in doing so, it violated his due process right to a trial presided over by a fair and impartial judge. In Point II, he claims that the trial court plainly erred in sentencing him as a prior offender, pursuant to § 558.016, because the court failed to comply with the procedural requirements of § 558.021 for sentencing as a prior offender.

We reverse and remand for a new trial.

### Facts

On January 22, 2000, the victim, E.N., a thirteen-year-old boy, who was an acquaintance of the appellant, went to his apartment. While at the apartment, the two performed oral sex on each other. The appellant also masturbated, ejaculating on the victim's leg. Shortly thereafter, the victim returned home, where his mother noticed that something was bothering him. When asked what was wrong, the plaintiff told his mother what had happened at the appellant's apartment. She immediately called the police to report the incident.

On February 3, 2000, an indictment was handed down by a Cole County grand jury, charging the appellant, as a prior offender, § 558.016, with statutory sodomy in the first degree, § 566.062. On October 13, 2000, an information in lieu of indictment was filed by the State.

On July 26, 2001, the case proceeded to a jury trial before the Honorable Byron L. Kinder. Despite the trial court's urging to the contrary, the appellant chose to waive appointed counsel and proceed *pro se*. During *voir dire*, the trial court, *inter alia*, questioned the venire concerning the appellant's decision to proceed *pro se*, as well as his physical appearance:

> In one fashion or another you can observe Mr. Houston. He is wearing prison garb. That should tell you something, shouldn't it?

> What does that tell you? He is in the Department of Corrections, for matters that have nothing to do with this trial.

> Now, because he has been convicted of other crimes in the past, would that make you as a juror have a tendency to believe that he's guilty because he's charged in this case. Do I see anybody that feels that way?

> . . .

> Also, anybody going to hold it against him because he is defending himself? He's going to maybe make some objections and I'm going to have to rule on them. And just because I overrule every objection or every question, or some of the questions he asks, doesn't mean he isn't doing the appropriate thing.

> You understand the man—put yourself in his position. He's chosen to do this. But consider you, if you were to have to sit down there. You know that you don't know the law. I wouldn't repair my own teeth or yours. It's skill. But he's chosen to do this. So it's going to make me—it may be a little difficult from time to time.

At trial, the State called seven witnesses, including the victim and two D.N.A. experts. The victim testified that on January 22, 2000, the appellant "sucked my stuff and . . . nutted on my leg." His testimony was supported by both D.N.A. experts, one matching semen found on his leg to the appellant at a probability of 4.8 quadrillion to one, the other matching it to the appellant at a probability of 1.82 billion to one.

The appellant chose not to present any evidence at trial, attempting instead to support his defense through cross-examination of the State's witnesses. In doing so, he consistently badgered the State's witnesses, repeatedly asking the same questions over and over again, and often

disobeying the express instructions of the trial court. As a result, the court became increasingly frustrated with the appellant, demonstrated by the following comments, all of which were made in the presence of the jury: (1) "Oh for goodness sake, what difference does it make who calls whom. Just get on with it now. You're going to wool me around a bit"; (2) "That means nothing, Mr. Houston. It's absolutely meaningless what you just said"; (3) "What's your point? You've gone over this ad nauseam, which means to the point of sickness"; and (4) "All right. Just stop this area of inquiry. It's absolutely meaningless. If you didn't want to understand? Now Mr. Houston, this is the second day of a trial, and you have tried the patience of this court." Eventually, the trial court's frustration boiled over, when, during the appellant's cross-examination of the State's last witness, the court declared, in the presence of the jury, that: "Well, remember I've told you, irrelevant questions and that's the end of your game. You have cross-examined, at length, everybody. And most of what you've asked has been immaterial and irrelevant." In addition, the trial court consistently ruled against the appellant on non-existent objections, several times declaring that the appellant's question was "immaterial and irrelevant."

After the State had rested, the appellant decided not to put on any evidence. Concerning that decision, the trial court, again in the presence of the jury, stated: "Let the record show that the defendant's case has rested due to his refusal to participate by presenting witnesses who he has subpoenaed and who he has interviewed some in this courtroom yesterday in a hearing held outside the presence and hearing of the jury."

On August 23, 2001, the jury returned a verdict of guilty. On that same day, Judge Kinder recused himself from the case. On September 6, 2001, the appellant filed a motion for judgment of acquittal, or, in the alternative, for a new trial. The motion was overruled. On August 26, 2002, the Honorable Patricia S. Joyce sentenced the appellant, as a prior offender, § 558.016, to thirty years in prison.

This appeal followed.

## I.

In point I, the appellant claims that the trial court plainly erred "in injecting itself in the proceedings numerous times to express its frustration and aggravation with [the appellant] and his cross-examination and in informing the jury of his incarceration" because, in doing so, it violated his due process right to a trial presided over by a fair and impartial judge. Specifically, he claims that the trial court did not act fairly and impartially in trying his case by abandoning its duty of neutrality in that it "informed the jury that [he] had a previous conviction; that his decision to represent himself was causing problems for the court; that his questioning was irrelevant; that he tried the patience of the court; that he had gone over matters 'ad nauseam'; and on numerous occasions making and sustaining objections *sua sponte*."

The appellant concedes that he did not properly preserve his claim of error in this point for appellate review in that he failed to object at trial to the trial court's challenged *sua sponte* comments and rulings on non-existent objections. *State v. Brown*, 58 S.W.3d 649, 652–53 (Mo.App. 2001). Hence, he requests plain error review under Rule 30.20.[2]

---

**2.** All rule references are to the Missouri Rules of Criminal Procedure, 2004, unless otherwise indicated.

■ Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr*, 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley*, 51 S.W.3d 44, 53 (Mo.App.2001). "Plain" error for purposes of Rule 30.20 is error that is evident, obvious and clear. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App.2000).

■ If the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear. *Id.* As in the case of our review for "regular" error, not every obvious error found in plain error review mandates reversal. *Carr*, 50 S.W.3d at 853. In the case of review for "regular" error, to be reversible, the found error must have prejudiced the appellant. *State v. Taylor*, 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of review for plain error, the error found must have prejudiced the appellant, except that such prejudice must rise to the level of manifest injustice or a miscarriage of justice. *State v. Cole*, 71 S.W.3d 163, 170 (Mo. *banc* 2002). Thus, even if obvious and clear error is found in the first step of the review, the second

step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Hibler*, 21 S.W.3d at 96. Here, because the appellant's claim, on its face, establishes substantial grounds for believing that the trial court's *sua sponte* comments concerning the strength of the appellant's defense at trial and its rulings on non-existent objections constituted obvious and clear violations of the appellant's due process right to have his case presided over by a fair and impartial judge, resulting in manifest injustice or a miscarriage of justice, we will review the claim for plain error.

■ "It is imperative that a trial judge maintains absolute impartiality during criminal proceedings so as to ensure that the defendant receives a fair trial." *State v. Bass*, 81 S.W.3d 595, 613 (Mo.App. 2002). Accordingly, "[a] judge must maintain a neutral attitude and avoid any demonstrated hostility which might impair the appearance of impartiality." *State v. Hudson*, 950 S.W.2d 543, 548 (Mo.App.1997). Moreover, a judge must not indicate a belief in either the guilt or innocence of the accused, "[n]or may [he] let such belief be reflected or even conjectured by the jury in his treatment of either [party]." *State v. Jackson*, 836 S.W.2d 1, 7 (Mo.App. 1992). Similarly, a question or comment from a trial judge must not express his or her opinion as to the evidence in the case. *State v. Bass*, 81 S.W.3d at 613. And, although "[n]o error [occurs] if the trial judge does not express [an] opinion as to the nature, content or truthfulness of the evidence," *id.* at 614, such an opinion may be expressed implicitly through suggestive conduct or hostile remarks. *See State v. Wren*, 486 S.W.2d 447, 448–49 (Mo.1972) (holding that the trial court committed prejudicial error by stating, in the presence of the jury, that it would allow de-

fense counsel to continue his cross-examination "ad nauseum"); *State v. Embry,* 530 S.W.2d 401, 405 (Mo.App.1975) (holding that the trial court committed plain error by *sua sponte* interjecting on behalf of the State four times during the appellant's cross-examination of a witness).

■ We begin our analysis by placing the trial court's challenged comments and *sua sponte* rulings in their proper perspective. A fair reading of the record indicates that the court's comments and rulings were obviously the result of a growing frustration with a *pro se* defendant who at times could be very trying. There is no question from the record that the appellant consistently, either intentionally or unintentionally, antagonized the trial court, as well as several of the State's witnesses. He often disobeyed express instructions of the court, and consistently badgered the State's witnesses, repeatedly asking the same questions over and over again. With that said, however, the fact remains that the appellant had an absolute right to have an impartial judge preside over his case. *State v. Thomas,* 791 S.W.2d 861, 862 (Mo. App.1990). Thus, while we recognize that "[t]rial judges are not stone statues," and that, in certain circumstances "reaction by the judge is understandable," we also recognize that "[c]oncern for the import on the jury of remarks by the trial judge as a result of questions or conduct of [either party] dictates restraint." *State v. Hudson,* 950 S.W.2d at 548.

In the case at bar, the trial court clearly communicated to the jury a disbelief in the appellant's defense, thereby abandoning its duty of neutrality. Most indicative of this is the trial court's comment to the appellant, in the presence of the jury, that: "You have cross-examined, at length, everybody. And most of what you've asked has been immaterial and irrelevant." Because the appellant did not present any evidence at trial, but chose to rely solely on his cross-examination of the State's witnesses to support his defense, by announcing to all present that the appellant's efforts on cross-examination were "immaterial and irrelevant," the trial court essentially told the jury that his defense was "immaterial and irrelevant." Even if the appellant's defense was tenuous, he was nonetheless "entitled to have it presented to the jury free of the stamp of disapproval placed there by the trial court." *State v. Wren,* 486 S.W.2d at 449.

In addition to its comments about the appellant's defense, the trial court also communicated to the jury a disbelief in the appellant's defense by ruling against him on several non-existent objections. In doing so, the trial court crossed the line of neutrality and improperly assumed the role of prosecutor, which inevitably leads the jury to believe that the judge favors the State over the defense. *State v. Embry,* 530 S.W.2d at 402–03; *see also United States v. Hickman,* 592 F.2d 931, 936 (6th Cir.1979) (stating that "[t]he only impression which could have been left in the mind of the jury [as a result of the trial court's consistent interjection on behalf of the government] was that the trial judge was a surrogate prosecutor"). As stated in *Embry,* by *sua sponte* interjecting on behalf of the State, the trial court "abandon[ed] its vital status of neutrality and assumed the role of prosecutor; this placed an undue burden on [the] defendant." 530 S.W.2d at 403.

■ Given the significant and consistent nature of the trial court's comments and interjections on behalf of the State, there is no question that the court stepped beyond the bounds of impartiality, thereby abandoning its duty of neutrality. Not only did this constitute error, it also constituted obvious and clear error. *See Embry,* 530 S.W.2d at 405 (holding that the trial

court committed plain error by *sua sponte* interjecting on behalf of the State four times during the appellant's cross-examination of a witness). The trial court's conduct "was not compatible with the fair trial to which the defendant was entitled," and, therefore, is "consider[ed] ... to be plain error." *Id.*

In *State v. Wren,* our Supreme Court addressed the requirements for a showing of prejudice in cases involving trial court misconduct. 486 S.W.2d at 448–49. There, the trial court responded to an objection, made by the State during the appellant's cross-examination of a witness, by stating that: "I think the objection is well justified, but I will overrule you and allow [the defendant] to develop this *ad nauseum.*" *Id.* at 448. On appeal, the appellant claimed that the trial court's remark, allowing him to proceed "*ad nauseum,*" demonstrated that the court frowned upon his defense, and thus constituted an abandonment of its duty of neutrality. *Id.* In response, the State argued that regardless of whether the trial court's conduct constituted error, the appellant could not demonstrate that he was prejudiced thereby. The Court disagreed.

■■■ Initially, the Wren Court acknowledged that the State presented a strong case at trial, and that the appellant's defense was tenuous at best, stating that: "Needless to say, the jury did not accept the [appellant's] evidence, nor do we suggest that it should have." *Id.* However, the Court proceeded to explain that its concern centered on "whether or not the decision as made [by the jury] might have been unduly affected by the attitude reflected by the trial court toward the defense [appellant] sought to establish." *Id.* Put another way, the Court was concerned "as to whether or not the comment could have conveyed to the jurors an impression that the evidence being offered was in the

mind of the judge totally absurd." *Id.* at 449. The Court was *not* concerned with the overwhelming evidence of guilt presented by the State, declaring that "[w]e need not reach a conclusion that the verdict of the jury would have been different absent the circumstances noted." *Id.* Thus, when determining prejudice in cases involving trial court misconduct, the ultimate issue is not whether the outcome of the trial would have been different absent the court's improper conduct, but whether its improper conduct "could have prejudiced the minds of the jury against the defendant." *State v. Primers,* 971 S.W.2d 922, 927 (Mo.App.1998); *State v. Webber,* 982 S.W.2d 317, 321 (Mo.App.1998).

Under the foregoing standard, there is no question that the appellant was prejudiced as a result of the trial court's misconduct. By essentially telling the appellant that his defense was "immaterial and irrelevant," and consistently interjecting on behalf of the State, all in the presence of the jury, the court basically told the jury that the appellant's defense was incredible. Consequently, it is indeed probable, if not likely, that the minds of the jury were prejudiced against the appellant as a result. However, as noted, *supra,* because the appellant failed to preserve his claim of error in this point, he must demonstrate that he suffered prejudice rising to the level of manifest injustice or a miscarriage of justice.

In *State v. Embry,* the Eastern District of this court faced an unpreserved claim of error involving trial court misconduct. 530 S.W.2d at 402–05. In that case, the trial court twice sustained non-existent objections in favor of the State, and twice, *sua sponte,* barred witnesses from answering questions posed to them on cross-examination. *Id.* at 402. On appeal, the appellant conceded that he had not properly preserved his claim of error, and, therefore,

sought plain error review.[3] *Id.* at 404. The appellate court held that the trial court's conduct constituted plain error, explaining that "we cannot say the jury did not construe the trial court's conduct adversely to the defendant, and the defendant's right to be tried by an obviously impartial judge [is] fundamental to our system of justice." *Id.* at 404–05. We see no reason why the same would not hold true here, particularly when one considers the fact that the trial court's misconduct was more egregious in this case, thereby raising the likelihood that the appellant suffered manifest injustice or a miscarriage of justice.

 Where a conviction is reversed based on trial error, rather than for insufficiency of the evidence, the proper remedy is to reverse and remand for a new trial. *State v. Douglas*, 131 S.W.3d 818, 826 (Mo.App.2004). "Reversal based on trial error does not amount to a determination that the government has failed to prove its case. As such, it implies nothing with respect to the appellant's guilt or innocence, it simply indicates that the appellant has been convicted through a defective process, mandating a new trial." *Id.* (citing State v. Wood, 596 S.W.2d 394, 398 (Mo. *banc* 1980)). "When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." *Id.*

## II.

In Point II, the appellant claims that the trial court plainly erred in sentencing him as a prior offender, pursuant to § 558.016, because the court failed to comply with the procedural requirements of § 558.021 for sentencing as a prior offender. Specifical-

ly, he claims that the trial court failed to make findings of fact regarding his status as a prior offender, and that, in any event, there was not sufficient evidence introduced to warrant a finding that he was a prior offender, as required by § 558.021.

Given the fact that we have already concluded the appellant's conviction must be reversed and the case remanded for a new trial, resolution of the issue presented in this point would have no practical effect upon the ultimate outcome of this appeal. As such, the point is moot, and we will not address it. *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 50 (Mo.App.2002).

### Conclusion

The judgment of the appellant's conviction for statutory sodomy in the first degree, § 566.062, is reversed, and the cause is remanded for a new trial in accordance with this opinion.

LOWENSTEIN, P.J., and HOWARD, J., concur.

---

**3.** At the time, plain error review was authorized by Rule 27.20.