STATE of Missouri, Respondent,

v.

Steven IANNIELLO, Appellant.

No. WD 34526.

Missouri Court of Appeals,
Western District.

April 3, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied
May 29, 1984.

Application to Transfer Denied
July 17, 1984.

J. Armin Rust, Regional Public Defender, Lexington, Mark T. Kempton, Wesner, Turley & Kempton, Inc., Sedalia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P.J., DOWD and REINHARD, Special Judges.

DOWD, Special Judge.

Defendant, Steven Ianniello, was convicted of assault in the first degree and second degree murder, §§ 565.050 and 565.004 RSMo 1978. He was sentenced to fifteen years for the assault and thirty years for the murder, both sentences to run concurrently. Defendant now appeals claiming the trial court erred in (1) failing to declare a mistrial because of improper influence on the jury, (2) refusing to instruct the jury on the law of duress, (3) permitting the jury to read a transcript of defendant's statements, and (4) failing to declare a mistrial when a witness' statement was nonresponsive. We affirm.

As defendant does not challenge the sufficiency of the evidence, we will set forth only those facts necessary to the disposition of this appeal.

Defendant, along with two acquaintances, Charles Morris and David Arles, arranged to buy some marijuana from the victims in this case, John Ettleman and Dennis Callaway. At the time of the transaction, Morris shot both of the victims. Arles instructed defendant to retrieve a blanket while the others removed all identification and belongings from the victims. Defendant, Morris, and Arles, then loaded the victims into a car and proceeded to dispose of the bodies. The victim, Ettleman, however, was still alive and walked to a farmhouse where he received aid. Subsequently, defendant voluntarily gave a statement admitting he was aware of the plan to kill Ettleman and Callaway, and that he assisted in it. This statement was tape recorded and later transcribed by Diana Ryan, secretary to the prosecuting attorney.

Defendant first claims the trial court erred in failing to declare a mistrial and in not granting him a new trial due to an improper communication with a juror by a state's witness. In support of this, he argues that after the close of all the evidence but before submission to the jury, the witness Ettleman, made a comment on the evidence to Sheriff Jeffries while the jurors were passing them in the hallway. The comment complained of is as follows: "Nothing was ever said about the big sheep coat that Callaway was wearing."

Defendant's attorney immediately brought this to the court's attention and a hearing was held where it was established that while two or three jurors had passed by the witnesses at that particular time, there was no evidence that any of them actually heard the remark. Moreover, Sheriff Jeffries, to whom the comment was directed, also testified he did not actually hear all of Ettleman's statement. The request for a mistrial was subsequently denied.

A mistrial is a drastic remedy to be granted only with the greatest caution in extraordinary circumstances, and the court is afforded broad discretion in determining whether such a remedy is necessary.

*State v. Gilbert,* 636 S.W.2d 940, 943 (Mo. banc 1982); *State v. Perry,* 643 S.W.2d 58 (Mo.App.1982).

Defendant maintains Ettleman's remark created an "opportunity for improper influence." Missouri, however, distinguishes between juror separation misconduct during the progress of the trial and one that occurs after the case has been submitted to the jury. After submission, if an opportunity for improper influence exists as to any juror, that alone will require a new trial. If the alleged misconduct occurred during the trial, however, the verdict will be set aside only if the state fails to show the jurors were not subject to improper influence. *State v. Burkhart,* 615 S.W.2d 565, 566 (Mo.App.1981). Here, there was no evidence Ettleman's comment was heard by the jurors. Moreover, the remark concerning Calloway's coat was not even particularly significant to the case. See *State v. Purnell,* 621 S.W.2d 277, 283 (Mo.1981). We find the trial court was in a better position to determine if any prejudice occurred and that it did not err or abuse its discretion in failing to declare a mistrial or grant a new trial. Point denied.

Defendant next contends the court erred in failing to instruct the jury on the law of duress as tendered by defendant in instructions A, B, C, and D. We disagree. It is not error to refuse instructions that totally lack evidentiary support. *State v. Perry,* 565 S.W.2d 841 (Mo.App. 1978). Duress is an affirmative defense, that the defendant engaged in the particular criminal offense because he was "coerced to do so by the use of or threatened imminent use of unlawful physical force upon him or a third person ... which a person of reasonable firmness in this situation would have been unable to resist." § 562.071 RSMo 1978. Defendant's evidence that he suffered from Dyslexia, a reading disability, and that he knew Morris had committed strong arm robbery in the past is insufficient proof that he was coerced to participate in the shooting.

■ There was no evidence presented indicating defendant's life was ever endangered and at no time did either Morris or Arles abuse, threaten, or point a gun at defendant in order to ensure his assistance in removing the bodies. Moreover, by defendant's own admission he was a willing participant who set up the drug transaction and later indicated he knew what was going to occur the night of the incident. Finally, Ettleman testified defendant remarked to Morris "You'd better shoot John again" after Morris had shot Ettleman the first time. We further note that § 562.071 2(1) specifically makes the defense of duress unavailable to the crime of murder. It is also well established that coercion does not excuse the taking of an innocent life. *State v. St. Clair*, 262 S.W.2d 25, 27 (Mo. 1953). Based on this alone, instructions A and B concerning second degree murder and manslaughter were properly excluded, and along with instructions C and D were not supported by the evidence.

■ Defendant also contends the trial court erred in allowing the jury to read a transcript of his statement while the jury listened to the taped recording because the transcript was inaccurate, speculative, cumulative hearsay, and unduly emphasized the defendant's statements. We find this point to be without merit.

At trial, defendant objected to the court's decision allowing the jury to read the transcript of defendant's statements, even though it was never admitted into evidence. Missouri courts have adopted the guidelines regarding the use of transcripts as set forth in *U.S. v. McMillan*, 508 F.2d 101 (8th Cir.1974), cert. denied, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), stating:

"The trial judge has the sound discretion to furnish the jurors with the transcripts if portions of the tape are inaudible or there is a need to identify the speakers. The transcript should normally be used only after the defendant has had an opportunity to verify its accuracy, and then only to assist the jury as it listens to the tape. If accuracy remains at issue, a foundation must first be laid by having the person who prepared the transcripts testify that he has transcribed their contents. The transcripts themselves should not be admitted into evidence unless both sides stipulate as to their accuracy and agree to their use as evidence. The trial judge should carefully instruct the jury to rely on what they hear rather than what they read where there is a difference. The transcripts should be collected from the jury after the tapes are played, and the jury should not be permitted to have the transcript during the deliberation."

*State v. Montgomery*, 590 S.W.2d 105, 108 (Mo.App.1979) [1]

We find these guidelines were meticulously adhered to in the case at bar. Background noises made portions of the tape inaudible and it was therefore within the trial court's discretion to furnish the transcript to the jury. When defendant questioned the transcript's accuracy, a proper foundation was laid by Diana Ryan who testified as to her experience in this field and to the fact that she listened to and accurately transcribed the tape. The transcript was never admitted into evidence, and the court further instructed the jury that the tapes were the real evidence to be followed in the event of any discrepancies. We believe the correct procedures were employed to protect defendant against any prejudice. Moreover, our review of both the tape and transcript has failed to establish any inaccuracy or lend support to defendant's claim that the transcript did not accurately reflect "the whispered urgings of the officers" present at the time of defendant's statement. The trial court did not abuse its discretion, and defendant's point is denied.

1. See *State v. Armbruster*, 641 S.W.2d 763 (Mo. banc 1982) and *State v. Englemen*, 653 S.W.2d 198 (Mo. banc 1983) where the court also addressed the propriety of supplementing taped recordings with typewritten manuscripts, and the procedural precautions to be employed by the court in the event the transcripts accuracy is disputed.

Finally, defendant argues the trial court erred in not declaring a mistrial when a state's witness gave a non-responsive answer which resulted in prejudice to the defendant in that it suggested the defendant had committed other crimes and left the jurors with the spurious presumption of guilt. We disagree. The granting of a mistrial when a witness unexpectedly volunteers an inadmissible statement is a drastic remedy, and the trial court is afforded great discretion evaluating the situation to ascertain whether some other remedy will cure the error. *State v. Walker*, 531 S.W.2d 55 (Mo.App.1975). *State v. Hamell*, 561 S.W.2d 357 (Mo.App.1977).

The statement upon which defendant's claim is predicated occurred during the direct examination of an investigator for the Sheriff's Department.

"Q. Who participated in the questioning of the defendant while the recorder was on?

A. Sheriff Jeffries did the actual questioning with the exception of one time when the defendant became concerned about who was going to hear this tape, whether he was going to make it public knowledge that he had confessed, and at that point he made some comment as to times past when he had confessed in Carthage—."

At this point, the trial court denied defendant's motion for a mistrial but acted promptly and correctly in labelling the answer as non-responsive, ordering the statement stricken and admonishing the jury to disregard it. *State v. Jackson*, 657 S.W.2d 44, 46 (Mo.App.1983). The statement in question was not unduly inflammatory or offensive because it did not allude to any specific crime. Accordingly, we find the trial court was within its discretion in refusing to declare a mistrial.

The judgment is affirmed.

All concur.