STATE of Missouri,
Plaintiff/Respondent,

v.

Lewis FELTON, Jr.,
Defendant/Appellant.

Lewis FELTON, Jr., Movant/Appellant,

v.

STATE of Missouri,
Defendant/Respondent.

Nos. 58742, 60758.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 28, 1992.

---

John A. Klosterman, Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robin H. Grissom, Asst. Atty. Gen., Jefferson City, for respondent.

CRANE, Judge.

A jury found Lewis Felton, Jr. guilty of the offenses of second degree murder in violation of § 565.021 RSMo 1986 and armed criminal action in violation of § 571.015 RSMo 1986. The trial court sentenced him to concurrent sentences of twenty-two years imprisonment for second degree murder and three years imprisonment for armed criminal action. Felton filed a Rule 29.15 motion for post-conviction relief which was denied without an evidentiary hearing. Felton appeals both the judgment of the trial court and the order of the motion court.

On his direct appeal Felton contends that the trial court erred in denying his request that the jury be instructed on voluntary manslaughter, in denying a motion for a mistrial based on juror misconduct, and in finding two child witnesses to be competent to testify. In his appeal from the order of the motion court, Felton asserts that the motion court erred in denying his motion

for post-conviction relief without an evidentiary hearing. In his motion he claimed he was denied his right to effective assistance of counsel when his retained attorney failed to object to statements made by the prosecutor in closing argument. We affirm both the judgment of the trial court and the order of the motion court.

## DIRECT APPEAL

The sufficiency of evidence to sustain Felton's conviction is not in dispute. The evidence at trial reveals that on May 29, 1989, Felton shot Mark Roberts, Sr. who died from the bullet wounds the next day. The shooting took place on a city street in the presence of numerous witnesses. Prior to the shooting, the victim had come to the scene as a passenger in an orange vehicle driven by his fiance, Diane Woods. Three of Woods' children were also in the vehicle, Frederick Patrick, then age six, Brandon Patrick, then age four, and Mark Roberts, Jr., an infant. Frederick and Brandon Patrick were Woods' children by Willie Patrick. Mark Roberts, Jr. was the victim's son. The victim and Woods had come to the scene to pick up Woods' daughter, Fredericka Patrick, who was living with Willie Patrick. Willie Patrick came up to the vehicle and made derogatory comments about the victim to Woods. Woods drove the automobile down the street and walked back to pick up Fredericka. She and Willie Patrick got into an argument which ended in a fist fight. The testimony conflicted on whether Felton, who was Willie Patrick's stepbrother, and who was called "Old Folks" by some of the witnesses at trial, was at the scene during the fight. Shortly after the fight, Felton and another man walked toward the car in which the victim was still sitting, holding his infant son. Willie Patrick pointed the victim out as the one in the orange car. When Felton looked in the car, the victim put the baby down, got out with his hands up and began running down the street. Felton's father told Felton not to shoot the victim, but Felton fired three shots, hitting the victim with one of the shots. The victim continued to run, then collapsed. Felton ran away. Felton subsequently gave the police a recorded statement denying his involvement in the shooting.

■ For his first point Felton asserts that the trial court erred in refusing his request that the jury be instructed on voluntary manslaughter. He argues that there was evidence that he hardly knew the victim and from that evidence "it is conceivable that he acted out of the provocation provided by his relationship with his stepbrother and the sudden passion thereby aroused during the altercation in the street." Felton was charged with first degree murder and the jury was instructed both on this offense and the lesser included offense of second degree murder. The trial court denied Felton's request for an instruction on voluntary manslaughter.

■ An instruction on a lesser included offense is required only if there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. Section 556.046.2 RSMo 1986. To justify the submission of an instruction on voluntary manslaughter there must be evidence of sudden passion arising from adequate cause. Section 565.-023.1(1) RSMo 1986; *State v. Merchant,* 791 S.W.2d 840, 842 (Mo.App.1990). Here the state's evidence was that Felton, without provocation, shot the victim, who had been sitting in an automobile holding a baby during a fist fight between the victim's fiance and Felton's stepbrother. When Felton approached the victim, the victim got out of the car and began running away. Felton's evidence was that he did not have a gun, did not know the victim, and was not the person who shot the victim.

When a defendant denies the commission of the act charged and there is no evidence which mitigates the offense or provides a different version of it, instructing down is not required. *State v. White,* 738 S.W.2d 590, 592 (Mo.App.1987). Felton denied committing the offense. The circumstances leading up to the shooting do not indicate that Felton was acting under the influence of sudden passion arising from adequate cause. There was no evidence to

form a basis for acquittal of second degree murder and conviction of voluntary manslaughter. Felton's first point is denied.

Felton next asserts that the trial court erred in denying his motion for a mistrial based on juror misconduct. Felton had moved for a mistrial during trial when two courthouse spectators reported they overheard a juror tell people in a hallway, during a recess, "Well, he's going to jail. I got a murder case, he's going to jail." Upon being apprised of this situation by Felton's counsel, the court held a hearing. The witnesses testified out of the presence of the jury and the court examined the jurors individually in chambers.

The first witness, who was in the courthouse to watch a trial in another courtroom, testified she saw a female juror in the hallway talking to two other women wearing jurors' badges. She heard the juror say, "Well, I'm in this court here." The others indicated that they were jurors in a case down the hall. She heard the first juror say, "Well, he's going to jail. I got a murder case, he's going to jail." The witness then told her companion that the jurors should not be talking like that. Her companion said he knew Doris Black, Felton's trial counsel, and he would report it to her. The companion, who was in the courthouse to watch the same trial as the first witness, was the second witness to testify. He stated that the juror was speaking to four women jurors and said, "I'm tired of it.... That fellow in this courtroom going to jail. He going to jail." He then reported the matter to Felton's attorney, whom he knew from his previous employment.

The court then examined the jurors individually in chambers. Juror 622, who was identified as the juror who was speaking in the hallway, was examined first. She denied discussing the case with anyone. She testified that when she returned from lunch she saw two jurors from another courtroom sitting on a bench. They said, "Are you still here?" She replied, "Yes, I got picked yesterday. I'm on this one over here." She testified she did not say that the defendant was going to jail and that

she had not prejudged the case. Juror 748 stated that she came to the hallway after lunch and saw Juror 622 talking to some women sitting on the bench. She left her coat with them, got a soda, and briefly joined them. She became uncomfortable because some of the trial spectators came into the hallway and sat directly across from them. She got permission for herself and the others to go to the jury room. While she was with the group in the hallway they discussed where they had eaten lunch. She did not hear Juror 622 say anything about the trial. Juror 970 stated that she was sitting on a bench with some jurors during the lunch break and someone said the defendant's family was sitting in the hall, which made them uncomfortable. No opinions were expressed about the case. Juror 130 did not hear anyone talk about the case over the break. Juror 115 stated that the only thing discussed by jurors in the hallway was that they did not want to sit in the hall with defendant's family members. Each of these jurors testified that they had not made up their minds on this case. The court admonished each juror not to speak about the in-chambers proceeding with any other juror.

After hearing the testimony, the trial judge stated that he believed the testimony of all of the witnesses, but chose to place greater weight on the testimony of the jurors, whose testimony was consistent and who were closer to the range of the conversation than the witnesses, who were 10 or 20 feet away. He overruled Felton's motion for a mistrial. When the trial resumed the court gave a cautionary instruction to the jury reminding them not to speak with each other about the case. He further advised them to sit in the jury room instead of in the hallway during future recesses.

Felton argues that the alleged comment of Juror 622 constituted juror misconduct for which he was entitled to a mistrial. A mistrial is a drastic remedy to be granted only with the greatest caution in extraordinary circumstances. *State v. Ianniello*, 671 S.W.2d 298, 300 (Mo.App. 1984). The trial court is afforded broad discretion in determining the necessity of

such a remedy. *Id.* If the alleged juror misconduct occurs during the trial, the verdict will be set aside only if the state fails to show the jurors were not subject to improper influence. *Id.* The court found that the jurors had not been subjected to any improper influence. The trial court was in a better position to judge whether Felton was prejudiced and did not abuse its discretion in overruling the motion for a mistrial. Felton's second point is denied.

For his third point Felton contends that the trial court abused its discretion by finding Frederick Patrick, age seven at trial, and Brandon Patrick, age four and a half at trial, competent to testify. Prior to trial, after a hearing on Felton's motion to declare child witnesses incompetent, the motion court, Judge Michael Godfrey, found both Frederick and Brandon to be competent. At trial Felton's counsel renewed her challenge to Brandon's ability to testify but did not renew her challenge with respect to Frederick.

 A trial court's ruling on a motion in limine is interlocutory in nature because it can be changed at trial. It is thus not appealable. *State v. Hart,* 805 S.W.2d 234, 237 (Mo.App.1991). In order for the issues raised in a motion in limine to be preserved for appeal they must be raised at trial at the time the evidence is offered. *Id.* Since Felton did not renew his objection at trial to Frederick Patrick's competency, he has not preserved this issue for review. We review only the trial court's determination of Brandon Patrick's competency which was challenged at trial.

 Felton argues that Brandon Patrick was incompetent to testify because he could not distinguish what he had personally observed from what his mother had told him. Brandon Patrick began his direct testimony without objection. He testified that he was in the car with the victim, that the victim got out of the car, put the baby down, and started running while Felton tried to get him with a gun. Then the prosecutor asked him about his ability to distinguish what someone told him from what he saw. The exchange took place as follows:

Q. (By Mr. Quinley) Brandon, do you know the difference—do you know the difference between what somebody tells you and what you see with your own eyes? Do you know the difference between that?

A. No.

Q. No? Did you see with your own eyes that night anything that happened?

A. Yeah.

Q. Okay. All I want to know, and Miss Black and the Court and the jury, all we want to know is what you saw and heard with your own eyes and ears while you were in the car. Do you remember, Brandon?

A. Yeah.

Q. Okay. Well, Brandon, we're just having a little trouble understanding. Can you please tell us?

A. Yeah.

Q. Okay. Go ahead, Brandon. It might help, Brandon, if you sat up and held your head up straight. Very good.

A. When Mark got out the door, he start running, and Old Folks start running and hit Mark in the back and the bullet went through Mark's heart.

Q. Okay.

THE COURT: I caught about ten percent of that.

MS. BLACK: May we approach the bench?

(Counsel approached the bench and the following proceedings were had:)

MS. BLACK: I'm going to still make a motion to declare this child incompetent to testify, your Honor. I think it's very clear he's already said in his statement that he had a hard time distinguishing between what he saw and what someone told him. And judging from his testimony, when he begins to relate what he saw, or whatever the question is, he's mixing up a lot of things that he could not possibly have witnessed, as counsel knows. I am sorry, but I realize the judge made a ruling before, but I mean this is the

first time this Court has had an opportunity to see.

MR. QUINLEY: Actually, the Court made an examination outside the hearing of the jury on can you distinguish right and wrong and tell the truth and what have you. And also what he has testified to has been things he had an opportunity to observe. If he uses language like went through his heart, well, we even have adults who do things like that.

THE COURT: Okay. Well, look, he's made this statement three or four times now, and I think—

MR. QUINLEY: Yeah, I don't think I need to belabor it.

THE COURT: Whatever you want to do, Doris.

MS. BLACK: Yeah, I want to cross him if the Court overrules me.

THE COURT: Off the record for a second.

(There was a discussion held off the record.)

THE COURT: I'll overrule your motion to declare this witness incompetent. I'll stay by the previous judge's ruling. And I believe that young man knows the difference between a truth and a lie. As far as his inability to be able to determine what he saw and what someone tells him, I think that certainly goes to the weight of his testimony. I believe you can attack that both now and in your closing argument.

Incompetency of a child to testify is governed by § 491.060 RSMo (Cum.Supp.1991), which provides:

The following persons shall be incompetent to testify:

. . . . .

(2) A child under ten years of age, who appears incapable of receiving just impressions of the facts respecting which he is examined, or of relating them truly; . . . The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony.

This statute creates a rebuttable presumption that a child under ten years of age is incompetent to testify except as a victim of certain offenses. *State v. Feltrop*, 803 S.W.2d 1, 9 (Mo. banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). For a child under the age of ten to be adjudged competent to testify, the child must exhibit: (1) a present understanding of, or the ability to understand upon instruction, the obligation to speak the truth; (2) the capacity to observe the occurrence about which testimony is being sought; (3) the capacity to remember the occurrence about which testimony is sought; and (4) the capacity to translate the occurrence into words. *Id.* at 9–10. This determination is left to the discretion of the trial court, and its decision will not be reversed absent a clear abuse of discretion. *Id.* at 10. Brandon's testimony was essentially the same as that given by his older brother, his older sister and his mother. *State v. Singh*, 586 S.W.2d 410, 416 (Mo.App.1979). The evidence was undisputed that Brandon was with the victim at the scene of the shooting. In his testimony he described the fatal shooting of the man he called his father, an event he would not likely forget. *Id.* He was able to describe this event in words. The trial court had the opportunity to personally observe Brandon's demeanor and found that he knew the difference between truth and a lie. The trial court did not abuse its discretion by allowing Brandon Patrick to testify.

### POST–CONVICTION APPEAL

For his appeal from the motion court's denial of relief under Rule 29.15, Felton asserts the motion court erred in failing to conduct an evidentiary hearing on his allegation that he was denied effective assistance of counsel at trial. He alleged that the closing argument improperly personalized the case to the jury and his retained attorney failed to object to the argument.

Review of a denial of a Rule 29.15 motion is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Childers*, 801 S.W.2d 442, 446 (Mo.App.1990). To prevail on a claim

of ineffective assistance of counsel, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* To do this movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *Childers*, 801 S.W.2d at 447. In order to show prejudice, a movant must show there was a reasonable probability that, but for the errors by his attorney, the jury would have had a reasonable doubt respecting his guilt. *Id.*

Felton argues that certain arguments made by the prosecutor during closing argument were improper personalizations and that a hearing was necessary to determine whether defense counsel's failure to object constituted a reasonable trial strategy. To be entitled to an evidentiary hearing on the issue of ineffectiveness of counsel, a movant seeking relief under Rule 29.15 must plead facts, not conclusions, which if true would warrant relief. *State v. Jennings*, 815 S.W.2d 434, 448–49 (Mo. App.1991). The allegations must be unrefuted by the record, and the matters complained of must have prejudiced movant. *Id.* at 449. A hearing is not required if the motion and files and records of the case conclusively show that the movant is not entitled to relief. Rule 29.15(g). We may only review such a finding to determine if it is clearly erroneous. Rule 29.15(j).

■ Felton argues that his counsel was ineffective for failing to object to the following statements:

And I think it also says something— again, I don't know what she saw that night. Maybe she didn't see anything. It may be, so that she didn't really know. All right? So I can't say that what she did tell us that Louis Felton Jr. did the crime, but it certainly again says something about what they are willing to do to try to save him now.

. . . . .

I ain't got the guts to do it. You know, maybe that's what this is all about. Like I say, I don't think I'll ever know. But maybe that's all this is about is this macho thing. You know, proving that you're a man. I ain't got the guts to do it. I mean is that what it is about shooting somebody in the back? Is that something that takes guts? I mean to me that's pretty cowardly action.

In the first statement the prosecutor was commenting on the credibility of Felton's mother's testimony and her bias as a witness. In the second statement the prosecutor was commenting on Felton's taped statement to the police, which was played at trial, in which Felton told the police he was not capable of killing because, "I ain't got the guts to do it." The motion court found that the prosecutor's arguments were within the scope of permissible argument and that, even if they were not, Felton failed to allege prejudice, "i.e., how the failure to object deprived him of his right to a fair trial."

The trial court's order was not clearly erroneous. The failure to object to evidence or argument constitutes ineffective assistance of counsel only when the comment is such that a substantial deprivation of the accused's right to a fair trial results. *Williams v. State*, 783 S.W.2d 457, 458 (Mo.App.1990). The comments did not constitute improper personalizations. The prosecutor's comments did not imply that he had special knowledge of facts which were not in evidence. Although the prosecutor used the pronoun "I", to the extent his comments could be interpreted as opinions on the credibility of the witness or the character of defendant, they are based on facts in the record. *See State v. Jones*, 604 S.W.2d 665, 667–68 (Mo.App.1980).

■ In addition the motion did not allege facts which would entitle Felton to a hearing. The allegations in a motion for postconviction relief must identify a reasonable probability that objections would have changed the result of the trial. *Robinson v. State*, 785 S.W.2d 323, 324 (Mo.App. 1990). In his motion Felton alleged counsel was ineffective because:

Counsel neglected to object to numerous improper personalizations made by the Circuit Attorney during closing argument in which he told the jurors what he thought the evidence was (Tr. 1182, 1208) and he gave his views about Mr. Felton's environment, family, neighbors, and education (Tr. 1183).

He argued in his motion as follows:

Mr. Felton was prejudiced by counsel's improper argument. Improper personalization in closing argument may constitute reversible error. *State v. Long*, 684 S.W.2d 361, 365 (Mo.App., E.D.1984). Personal attacks on defense counsel by the prosecutor are improper and prejudicial and also constitute reversible error. *See Harris* and *Hornbeck, supra.* Accordingly, had counsel objected to the improper argument there is a reasonable probability that the outcome of the proceeding would have been different.

These allegations constitute opinions and conclusions. They do not constitute facts, which if true would have warranted relief. Absent such allegations in the motion, Felton was not entitled to an evidentiary hearing.

The judgment of the trial court and the order of the motion court are affirmed.

CARL R. GAERTNER, P.J., and SIMON, J., concur.