STATE of Missouri, Respondent,

v.

**John David JONES, Appellant.**

No. WD 69994.

Missouri Court of Appeals,
Western District.

Dec. 15, 2009.

---

Rosalynn Koch, Columbia, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before JOSEPH M. ELLIS, P.J., VICTOR C. HOWARD, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

John David Jones appeals his conviction, after a jury trial, for domestic assault in the second degree, pursuant to Section 565.073, and kidnapping, pursuant to Section 565.110. He requests plain error review of his claims that the circuit court abused its discretion in excluding certain evidence and that the circuit court aban-

doned its duty of neutrality in injecting itself into the proceedings. In that Jones cannot demonstrate manifest injustice on the face of his claims, we affirm.

## I.  Factual and Procedural Background

Jones's convictions arose from a series of incidents in October 2007. He was involved in a romantic relationship with the victim, K.O., and had shared her Columbia residence for four months. On October 6, 2007, K.O. was invited to join her family for lunch in a nearby town. Jones asked to accompany her. K.O. told him she did not want him to go. While K.O. was at lunch with her family, Jones repeatedly called the restaurant to tell K.O. he wanted to join her. When Jones finally told her that he and a neighbor were coming to the restaurant, K.O. left the restaurant and returned to Columbia. She played darts and drank beer at a Columbia tavern for a couple of hours before returning home.

Jones was waiting for K.O. at the apartment. He became angry when K.O. told him that she had been at the tavern. An argument ensued. Jones went into the kitchen, returning with a knife. K.O. picked up a baseball bat and retreated behind the couch but dropped the bat when Jones threw a potted plant at her. Jones then came around the living room couch, dropped the knife, and pushed K.O. against the wall. He grabbed her by the throat, threw her to the floor, and choked her until she lost consciousness.

Jones had the knife in his hand when K.O. regained consciousness. He picked her up by the arm and said that he was going to take her to St. Louis, stating, "I'm going to have my buddies drug you and hurt you and rape you and teach you a lesson not to treat me like this anymore." K.O. got into the car, and Jones began to drive at a high rate of speed eastbound on I–70. Jones called his sister, Susanne Lewis, yelling about K.O. and threatening to run the car into a highway pillar or off a cliff. Jones told Lewis that he had a knife and that he had choked K.O. When Jones handed the phone to K.O., Lewis asked her if she was okay. K.O. said, "No," and began to cry. Jones grabbed K.O. by the hair and repeatedly slammed her head into the console, while K.O. screamed and Lewis, still on the phone, yelled his name. Jones let go of K.O. and hung up on his sister. Lewis's husband called 911, and Lewis reported what Jones had told her.

At some point, Jones pulled off the highway and stopped at a convenience store to purchase cigarettes. He parked near the door to the store and told K.O. to stay in the car. K.O. testified that Jones watched her the entire time and that she was afraid that if she ran he would hurt her. When Jones pulled back onto the highway, he was travelling westbound toward Columbia.

When they returned to the apartment, K.O. went into the residence and told Jones that she was going to bed. Jones joined her in the bedroom, pulling a dresser in front of the door to block the door. The next morning, K.O. told Jones she had to go to work, but Jones told her that she was not going anywhere looking "like that." When K.O. went into the bathroom, she saw that her eyes were bloody and that her long hair was knotted and tangled. She called in sick to work and went back to bed. Jones later asked K.O. for sexual intercourse, and K.O. complied.

When K.O. got up, she went to shower and attempted to unknot her long hair. She was in the shower when Jones pulled back the shower curtain and told her to be quiet. The police, responding to another call from Lewis, were knocking on the door and walking around the building.

When Jones did not respond to the knock, the police called his cell phone. Jones told them that he was at his sister's home unaware that the police had just spoken to Lewis. While K.O., still in the bathroom, dried off and got dressed, Lewis spoke with his sister and told her to report that he and K.O. were not at the apartment. Lewis called the police and reported that Jones planned to keep quiet so the police would think the apartment was empty.

Jones and K.O. eventually exited the apartment. The police placed Jones under arrest. Jones told the officers that K.O.'s injuries were the result of a beating from "some Mexican girls" at a bar. He later told officers that K.O. had attacked him with a baseball bat and that, when medics were called in response to his request, he refused medical attention.

K.O. refused medical treatment. Officers noted petechial hemorrhaging in both eyes, bruises on K.O.'s back, and knots in her hair. They reported that she complained of pain in her neck and that she walked slowly and coughed frequently.

At trial, Jones did not testify but presented the testimony of his employer's bookkeeper who stated that K.O. had tried to cash one of Jones's paychecks, and the testimony of a jail employee who testified that Jones had "an area of redness" on his shoulder when he arrived at the jail on October 8. The jury found Jones guilty of kidnapping and domestic assault in the second degree but found him not guilty of felonious restraint. Jones was sentenced as a prior and persistent offender to concurrent terms of fifteen years and seven years, respectively. This appeal followed.

## II. Analysis

■ Jones raises two points of error. In his first claim, Jones asserts that the circuit court abused its discretion in excluding from evidence a defense exhibit documenting Jones's paychecks. Jones called his employer's bookkeeper as a defense witness. He questioned the bookkeeper regarding an exhibit purporting to document the front and back of Jones's paychecks. The State objected as to relevance. The court sustained the objection. The defense then asked the bookkeeper about a specific check. The State again objected as to relevance and further objected that the defense was trying to question a witness about "something that's not in evidence." The court sustained the objection. Jones did not make an offer of proof or attempt to admit the exhibit but began to question the bookkeeper about a conversation she had with K.O. about why payment on a paycheck had been stopped.

■ "To preserve a claim that evidence was improperly excluded, the proponent of the evidence must attempt to present the evidence at trial, and if an objection is sustained, the proponent must then make an offer of proof." *State v. Speaks*, 298 S.W.3d 70, 85 (Mo.App.2009). An offer of proof is necessary not only to provide the circuit court the opportunity to further consider whether the evidence should be admitted but also to provide the appellate court with the scope and effect of the excluded evidence. *State v. Tisius*, 92 S.W.3d 751, 767–68 (Mo. banc 2002). An offer of proof must establish: "(1) what the evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence." *Id.* at 767. Absent an offer of proof, the claim that evidence was excluded in error is only reviewable for plain error at the court's discretion. *Id.* at 768.

Here, Jones failed to make any offer of proof. Consequently, the only review available for this claim is plain error. "Plain error review is a two-step analysis."

*State v. Chism*, 252 S.W.3d 178, 183 (Mo. App.2008). We must first determine if the error is plain upon the face of the record and then "whether manifest injustice or miscarriage of justice would result if the error is left uncorrected." *Id.* Under a plain error analysis, a manifest injustice is shown where "the trial court's error in admitting the evidence was outcome determinative." *State v. Irby*, 254 S.W.3d 181, 192 (Mo.App.2008). Plain error must be evident and obvious and affect the substantial rights of the defendant. *Chism*, 252 S.W.3d at 183.

Jones asserts that the circuit court improperly excluded the paycheck records which, he argues, would have established that K.O. was frustrated in her attempt to cash Jones's paycheck and so had a bias to testify against him. As Jones failed to make an offer of proof to establish what the proffered evidence would show, we cannot determine the effect of the evidence. Indeed, we are unclear as to why Jones sought to admit the paycheck records at all. The paycheck in question was not even part of the exhibit; the bookkeeper testified she did not list that particular check in the document because she had stopped the check. Moreover, the bookkeeper also testified that she stopped the check at the request of Jones's sister and that she discussed with K.O. why she had stopped payment on the check. Thus, the evidence Jones sought to establish with the exhibit, that K.O. had attempted to cash his paycheck, came in through the bookkeeper's testimony.

As the evidence that Jones claimed was excluded in error came in through testimony, Jones cannot, on the face of the claim, establish prejudice much less manifest injustice. Consequently, we decline plain error review. Point denied.

■ Jones next asserts that the circuit court abandoned neutrality and injected itself into the proceedings when it asked defense counsel why he was writing certain statements on a board during his cross-examination of K.O. Jones asserts that the circuit court acted not in response to an objection from the State but, rather, acted *sua sponte*, to correct defense counsel's action, thus demonstrating bias toward the State. Jones concedes that this claim is unpreserved for appellate review and asks for plain error review.

K.O. was the State's first witness. On cross examination, defense counsel asked K.O. about a series of statements she allegedly made to the police that were inconsistent with her trial testimony. K.O. responded the she did not remember "every word [she] said to those officers" and that she did not remember talking to them. Defense counsel then wrote something on an easel. When defense counsel asked K.O. about another statement, the State objected that K.O. had already testified that she did not remember her statement to the police. The objection was overruled. Defense counsel repeated the question; the witness responded that she did not remember the statement. The court then asked, "Why are we writing down what she doesn't remember?" Defense counsel replied that there were inconsistencies in "all the stories." The circuit court told counsel, "But you're testifying."

The parties approached the bench. The court told defense counsel that, if the victim did not remember making the statements, writing them down on a board before the jury was "testifying" to the statements. The court instructed counsel that she could question K.O. about the statements, but she could not write the statements on a board in view of the jury, because the statements had yet to be proven.

Back in open court, the victim testified that she did not remember making four specific statements to one of the police officers but stated that another statement "was probably true." The victim's application for an ex parte order of protection that included the inconsistent statements was admitted into evidence. Defense counsel later cross-examined police officers about the statements, and the defense introduced portions of a police interview of the victim.

Jones claims that circuit court made and sustained its own objection on behalf of the State thus abandoning his impartiality. "It is imperative that a trial judge maintains absolute impartiality during criminal proceedings so as to ensure that the defendant receives a fair trial." *State v. Bass,* 81 S.W.3d 595, 613 (Mo.App. 2002). "A judge must maintain a neutral attitude and avoid any demonstrated hostility which might impair the appearance of impartiality." *State v. Hudson,* 950 S.W.2d 543, 548 (Mo.App.1997). "Similarly, a question or comment from a trial judge must not express his or her opinion as to the evidence in the case." *State v. Houston,* 139 S.W.3d 223, 227 (Mo.App. 2004). When assessing a voluntary act of the court, we must determine "whether the remarks of the trial court could have prejudiced the jury against [the defendant]." *State v. Jones,* 921 S.W.2d 28, 33 (Mo.App. 1996).

Jones does not assert that the court was commenting on the evidence but, rather, that the court improperly objected, *sua sponte,* to his "procedure in showing the jury the conflicts between K.O.'s statements to police shortly after appellant's arrest and her testimony at trial." However, the statements that defense counsel

wrote on the board were not in evidence. K.O.'s denials could establish the foundation for the prior inconsistent statements, but the statements themselves were not in evidence until Jones presented evidence that K.O. actually made the prior inconsistent statements. *State v. Garrison,* 276 S.W.3d 372, 379 (Mo.App.2009) ("the State, . . . to impeach the witness, was required to present evidence showing the witness did, in fact, make the prior inconsistent statement"). Thus, the prior inconsistencies were not established until the police officers to whom K.O. allegedly made the statements so testified.

As the statements were not yet in evidence, Jones's procedure of writing them on the board and thereby publishing them to the jury was improper. *See State v. Candela,* 929 S.W.2d 852, 862 (Mo.App. 1996) (publication of an exhibit to the jury that was not admitted into evidence constitutes error). Until the defense presented evidence that K.O. made the statements, the questions asked of K.O. laid the foundation for impeachment but did not prove the statements. Thus, the statements were not in evidence and not properly before the jury.

The circuit court has great discretion to impose reasonable limits on cross-examination to avoid prejudice, confusion of the issues, marginally relevant interrogation, undue delay, waste of time, or cumulativeness. *See State v. Barriner,* 111 S.W.3d 396, 400 (Mo. banc 2003); *State v. Dixon,* 922 S.W.2d 75, 77 (Mo.App.1996). The circuit court's *sua sponte* action to prevent Jones from publishing to the jury statements not in evidence was a reasonable action within the scope of the court's discretion and was necessary to prevent confusion of the issues.[1] Moreover, Jones

---

1. This court is not unaware of the penchant of some trial lawyers to interrupt cross-examina-

tion in order to record their questions and the witnesses' answers on large tablets in the

cannot show that the circuit court's action created a manifest injustice because the inconsistent statements came into evidence with the testimony of the police officers to whom the statements were made.

The circuit court acted to prevent a confusing and improper procedure, and the court's actions do not appear, on the record, to have prejudiced the jury. Jones cannot show, on the face of the claim, that he suffered a manifest injustice as a result of the circuit court's actions. Accordingly, we decline plain error review. Point denied.

We, therefore, affirm the circuit court's judgment.

All concur.

hope of creating an "exhibit" that they might later use in their closing arguments. It is understandable that a trial judge might find this practice to be a misuse of the jury's time and attention and require counsel to desist and produce his "exhibits" on his own time, as the scope and manner of cross-examination is within the discretion of the trial judge.