

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED107394 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 16SL-CR08614 |
| | ) | |
| SCOTT BAILEY, | ) | Honorable Kristine A. Kerr |
| | ) | |
| Appellant. | ) | Filed: March 31, 2020 |

## OPINION

Scott Bailey ("Bailey") appeals the trial court's judgment entered upon a jury verdict convicting him of one count of second-degree involuntary manslaughter. We affirm.

## BACKGROUND

On July 8, 2016, after dinner at a local restaurant, Bailey and his wife were traveling South on Lindbergh Boulevard ("Lindbergh") in their Mustang when they stopped at a traffic light at the intersection of Ladue Road and Lindbergh behind a black BMW, driven by Haven Sooter ("Sooter"). Ultimately, Bailey passed Sooter at a high rate of speed and they collided with Kathleen Koutroubis ("Koutroubis"), who was driving a white SUV. At trial it was hotly contested whether they were racing or if Bailey was merely trying to pass Sooter, who he alleged was driving erratically.

Initially, Koutroubis was conscious, alert, and able to speak with the paramedics who responded to the call regarding the accident. She complained of abdominal pain but became unresponsive as she was being assessed on the scene. Koutroubis was taken to Mercy hospital in an ambulance where she died from abdominal bleeding caused by blunt force trauma due to the accident.

Bailey was charged with one count of first-degree involuntary manslaughter for operating a vehicle while intoxicated[1] and one count of first-degree involuntary manslaughter. A jury convicted Bailey of the lesser offense of second-degree involuntary manslaughter. The trial court entered judgment on the jury's conviction and sentenced Bailey to four years imprisonment, suspending the execution of sentence with five years' probation and sixty days shock incarceration. This appeal follows.

**DISCUSSION**

Bailey asserts six points on appeal. In point one, he claims the trial court erred in allowing the jurors to use a transcript of a video recorded by dash-camera because the transcript was not verified by the individual who transcribed the audio. In his second point, Bailey argues the jury's verdict was coerced because the court improperly forced the jurors to continue to deliberate after the jury sent notes to the trial court. In point three, he contends the trial court erred in denying his request for a mistrial when the prosecutor improperly elicited testimony from its witness that Bailey and Sooter were racing the night of the accident. Point four asserts the court erred in failing to maintain an appearance of neutrality. In point five on appeal, Bailey claims the court erred in denying his multiple motions for mistrial because of the improper conduct of the bailiff during

---

[1] The State *nolle prosequied* the first count prior to trial.

trial. In his sixth and final point, Bailey alleges the State improperly struck four of the six African American members of the venire panel.

## Point One

In his first point on appeal, Bailey claims the trial court erred in allowing the jury to use a transcript of the dash-camera video. Bailey argues the accuracy was not verified by the person who transcribed the audio, thus, the transcripts were improperly disseminated to the jury. Bailey further argues the court erred in denying his request for a mistrial because the jury failed to follow the court's limiting instruction regarding use of the transcript.

### Standard of Review

On appeal, Bailey's point is only preserved for appellate review if it is based on the same argument presented to the trial court. *State v. Ragland*, 494 S.W.3d 613, 627 (Mo. App. E.D. 2016) (citing *State v. Johnson*, 207 S.W.3d 24, 43 (Mo. banc 2006)). At trial he objected to the use of the transcript, but only on the grounds it was not accurate and constituted hearsay. He did not object due to a lack of foundation or authentication by the transcriber, nor did he raise this allegation in his motion for new trial. Therefore, this issue is not preserved for our review. As a result, we may only review the claim for plain error pursuant to Rule 30.20.[2] The rule provides our court with the discretion to review "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted."

Bailey's secondary contention in this point relates to his request for a mistrial, which is a drastic remedy and we afford the trial court great discretion in evaluating the situation to determine whether another remedy would cure the alleged error. *State v. Ianniello*, 671 S.W.2d 298, 301 (Mo. App. W.D. 1984).

---

[2] All references to Rules are to Missouri Supreme Court Rules (2018).

*Analysis*

At trial and over Bailey's objection, the court allowed the jurors to use a transcript of the dash-cam recording of the interaction between Bailey and Officer Nathaniel Dolin ("Officer Dolin") and Officer Brett Lockwood ("Officer Lockwood") at the scene and limited its use to only when the video was being played. The jurors were not allowed to keep the transcript, nor was it allowed to be sent back if requested during deliberations. In addition, the court instructed the jury, "[t]his transcript is not evidence, and is being provided to you to assist you in following the video and audio recording," when providing the transcript for review during the video. The jury was further instructed that, "the video and audio recording, not the transcript[,] is the evidence. Should there be any discrepancies between the video and audio recording and the transcript you are to be guided by you what [sic] hear on the video and audio recording."

It is within the trial court's sound discretion to provide a transcript of portions of a video if there is a need to assist the jury in hearing inaudible portions or to identify the speakers. *Ianniello*, 671 S.W.2d at 301. Generally, a transcript should only be used after the defendant has the opportunity to verify its accuracy; however, if its accuracy is at issue, a foundation must be laid by the person preparing the transcript, verifying the accuracy of the contents. *Id.* (quoting *U.S. v. McMillan*, 95 S.Ct. 1577 (8th Cir. 1974)). In addition, the trial court should carefully instruct the jury to rely on what they hear rather than read if there is a discrepancy. *Id.* Finally, the transcript should only be given to the jurors when the video is played and the jury should not be allowed to have it during deliberations. *Id.*

At trial, Bailey objected to the use of the transcript as inaccurately reflecting some of his statements and as hearsay, but never objected to a lack of foundation. We cannot convict the trial court of error regarding an issue not presented to it. *See State v. Prine*, 456 S.W.3d 876, 881 (Mo.

4

App. S.D. 2015). In the absence of an objection regarding whether sufficient foundation was laid for the veracity of the transcript, the court properly both admonished the jury regarding its use and properly limited the jury's access to it; thus, "meticulously" adhering to the guidelines in the case at bar. *See Ianiello*, 671 S.W.2d at 301.

Moreover, Bailey conducted an extensive and thorough cross-examination of both Officers Dolin and Lockwood and presented his own testimony regarding his contested statements. In light of the specific circumstances concerning the use of the transcript in this case, we cannot conclude a plain error manifest injustice or miscarriage of justice resulted from the use of the transcript even absent authentication by the transcriber.

Bailey also contends the trial court erred denying his request for mistrial because the jury did not follow the trial court's limitation regarding the use of the transcript, arguing one juror informed the court that if the transcript "creates issues[,] then just take them from us." However, the record reflects, the court repeated the limiting instruction to the jury when she saw the jurors reading ahead in the transcript before the video was played at trial and it was promptly removed after the video concluded. Moreover, the court specifically found she did not observe anything in the jury's demeanor to indicate any prejudice to Bailey.

A mistrial is a drastic remedy, and we afford the trial court great discretion in evaluating the situation to determine whether another remedy would cure the alleged error. *Ianniello*, 671 S.W.2d at 302. Here, the trial court properly instructed the jury regarding the use of the transcript, further admonished the jurors upon observation they may have been reading it while the video was being prepared, removed the transcript after the video was played, and did not allow them to use it during deliberations. As a result, the record in this case does not reflect any abuse of the trial

5

court's discretion denying Bailey's request for a mistrial based upon the juror's statement regarding the transcript. Point one is denied.

## Point Two

In point two on appeal, Bailey alleges the verdict was coerced because the trial court forced the jurors to continue deliberations after the jury sent three notes to the court expressing their doubt about their ability to arrive at a unanimous verdict.

## Standard of Review

The decision regarding the length of time a jury is allowed to deliberate is a matter within the trial court's sound discretion. *State v. Brand*, 544 S.W.3d 284, 291 (Mo. App. E.D. 2018). Thus, we review the trial court's conduct in this regard for abuse of discretion. *Id.* at 292. To demonstrate an abuse of discretion, the defendant must show the jury's verdict was coerced. *Id.* We consider the verdict coerced only if under the totality of the circumstances it appears the trial court was virtually directing the jury to reach a verdict and by implication was indicating it would hold the jury until a verdict was reached. *Id.*

## Analysis

The jury was released to begin deliberations at 3:50 p.m. At 6:35 p.m., the court received a question from an individual juror signed by the foreperson asking, "[w]hat constitutes a hung jury?" A second question from another juror asked, "[w]hat if we cannot come to a unanimous decision and if there's zero percent chance of that happening?" The court responded to both questions with, "[t]he jury is to be guided by the evidence as they recall it and the instructions of law provided to them by the Court." The State and Bailey affirmatively stated "[n]o objection" to this response.

6

Less than thirty minutes later, at 6:59 p.m., the jury sent another communication to the court signed by the foreperson stating, "[j]urors are refusing to consent to unanimous agreement on any of the options First Degree, Second Degree or not guilty. Therefore, we do not consent to signing any of three options." The trial court proposed to give the same response as it did to the prior questions. Bailey objected to this response, and the court overruled the objection and issued its proposed response to the jury at 7:27 p.m. Very shortly thereafter, three jurors requested a break to smoke at 7:45 p.m. This request included the statement, "[t]his is going nowhere." The trial court deemed the sentence a comment, rather than a question, which did not require a response. Bailey objected and asked that the court declare the jury hung. The court denied Bailey's request and granted the jurors' request for a break. The jury ultimately returned its verdict finding Bailey guilty of one count of second-degree involuntary manslaughter at 10:25 p.m.

Nothing in the record before us indicates under the totality of the circumstances the jury's verdict was coerced. The first two questions were asked approximately three hours after commencement of deliberations, followed by a comment which did not require a response from the court. In response to both communications, the court merely reminded the jurors to be guided by the evidence and instructions.

The trial court never told the jury it must reach a verdict, nor did the court imply it would hold the jury until a verdict was reached. The jury returned its verdict approximately two hours and forty minutes after the last indication of any issue arriving at a verdict.[3] These facts do not support the necessary finding of coercion. These facts are distinguishable from those present in *State v. McNail*, 767 S.W.2d 84 (Mo. App. E.D. 1989), relied on by Bailey, particularly given the nature of the direct communication in *McNail* that two jurors could not "in good conscience

---

[3] The jury also asked for permission to call their loved ones at 8:25 p.m.; however, this communication did not contain any reference to deliberations.

compromise their opinions," and the fact the jury was specifically told they would be held over until the next day for further deliberations. *Id*. at 86-87. Thus, the trial court did not abuse its discretion in allowing the jury to continue to deliberate following their communications. *See Brand*, 544 S.W.3d at 293. Point two is denied.

*Point Three*

In his third point, Bailey contends the trial court erred in denying a mistrial when the State deliberately elicited prohibited testimony from Officer Paul Kempke ("Officer Kempke") that Bailey and Sooter were racing the night of the accident. According to Bailey, this testimony invaded the province of the jury and the court's instruction to disregard the testimony was not an appropriate remedy.

*Standard of Review*

The decision regarding whether to admit or exclude an expert's testimony is generally within the trial court's sound discretion. *Johnson v. State*, 58 S.W.3d 496, 499 (Mo. banc 2001). We will not reverse the trial court's decision in this regard absent an abuse of discretion. *State v. Knese*, 985 S.W.2d 759, 768 (Mo. banc 1999) (quoting *State v. Skillicorn*, 944 S.W.2d 877, 891 (Mo. banc 1997)). As previously noted in point one, the decision to grant or deny a mistrial is a drastic remedy, and we afford the trial court great discretion in evaluating the circumstances to determine whether another remedy will sufficiently cure the alleged error. *Ianniello*, 671 S.W.32d at 302.

*Analysis*

On the State's direct examination, Officer Paul Kempke, an accident reconstructionist with the Missouri Highway Patrol, was asked if the accident was consistent with two vehicles racing based on the data he reviewed and his simulation of the accident. He replied, "Yes." Bailey

8

requested a mistrial, arguing lack of foundation for Officer Kempke's opinion, as well as the fact the testimony related to an ultimate issue before the jury. The court concluded the testimony did not warrant a mistrial but sustained Bailey's objection and instructed the jury to disregard the testimony.

In a criminal case, an expert witness may testify to his opinion of an ultimate issue in the case, but the testimony must aid the jury and not invade the jury's province as fact finder. *State v. Harris*, 305 S.W.3d 482, 490 (Mo. App. E.D. 2010). Expert testimony is used to assist the jury in areas outside its everyday or lay experience and it is admissible on subjects about which the jury may lack experience or knowledge. *Id*. However, expert testimony constituting a conclusion of law is inadmissible. *Id*.

Here, Officer Kempke's testimony regarding the accident reconstruction was premised upon data from the vehicles' black boxes, evidence collected from the accident scene, and his simulation of the accident. This data indicated Bailey's vehicle was traveling at speeds in excess of 100 miles per hour prior to the fatal accident, all of which is clearly outside the jury's common experience. His comment on whether what he discovered was consistent with two vehicles racing, while an opinion regarding an ultimate issue in the case, was not an improper comment regarding Bailey's guilt or innocence.

There was significant evidence presented at trial concerning the rates of speed of both Bailey and Sooter's vehicles and the position of the vehicles after the accident from which the jury could have concluded the vehicles were racing when Sooter's BMW collided with Koutroubis' SUV. Thus, such testimony would not have invaded the province of the jury as the finder of fact but instead merely assisted the jury in evaluating the evidence and making its own determination as to whether they were, in fact, racing.

9

Indeed, we question whether Office Kempke's testimony that the vehicles were racing, based on the data and evidence, was even inadmissible. However, in an abundance of caution, the trial court decided to sustain Bailey's objection to the testimony and order the jury to disregard it. The trial court did not err in determining this was the appropriate remedy rather than grant the drastic remedy of a mistrial. Point three is denied.

In point four, Bailey claims the court improperly injected itself into the proceedings by criticizing counsel, making rulings and comments *sua sponte* in the presence of the jury, and conducting itself in a derogatory and unprofessional manner toward Bailey's counsel.

*Standard of Review*

The record reflects that Bailey raised the issue of the trial court's allegedly prejudicial behavior and demeanor during only once during a side bar conference. However, he did not object or request any remedy for what he claims were improper statements in the court's rulings. Moreover, the only specific issue raised in his motion for new trial in this regard was the court's comment regarding the fact "he would have to try his case how he saw fit even if the jury could not hear him," which was not even the issue he complained of during the side bar conference. In fact, Bailey did not raise any claims in his motion for new trial regarding the extrajudicial comments during the court's rulings he now asserts were error. Consequently, we find this claim is not properly preserved, but we may review it for plain error. Pursuant to Rule 30.20, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom."

*Analysis*

10

It is "imperative" that a trial judge remains absolutely impartial during criminal proceedings to ensure the defendant receives a fair trial. *State v. Jones*, 299 S.W.3d 324, 329 (Mo. App. W.D. 2009) (internal quotation omitted). The judge must maintain a neutral attitude and avoid any demonstration of hostility that may impair the appearance of impartiality. *Id*. When determining whether the court's voluntary act was erroneous, we consider whether the remarks could have prejudiced the jury against the defendant. *Id*.

The majority of Bailey's multiple allegations regarding the trial court's conduct occurred out of the hearing of the jury. The remaining instances constituted the trial court's ruling on objections made by the State and one comment on counsel's need to "speak up" so the jurors could hear him.

Bailey equates the court's conduct to *State v. Houston*, 139 S.W.3d 223 (Mo. App. W.D. 2004). In *Houston*, the trial court communicated a disbelief in the defense presented by a defendant acting *pro se* and essentially told the jury his defense was "immaterial and irrelevant." *Id*. at 228. The Western District concluded, "[g]iven the significant and consistent nature of the trial court's comments and interjections on behalf of the State, there is no question that the court stepped beyond the bounds of impartiality, thereby abandoning its duty of neutrality." *Id*. The Court held the trial court's conduct was not compatible with the defendant's right to a fair trial, and therefore it was considered plain error. *Id*. at 229.

We find this comparison exceedingly disingenuous. Here, the trial court made three comments during rulings essentially reiterating the State's grounds for the objection within the hearing of the jury. In addition, the court made one comment to counsel to speak up so the jurors could hear him, which could only benefit – not harm – Bailey. Counsel did not properly raise an objection and seek a remedy in these instances, nor did he raise the issue in his motion for new

11

trial.  Instead, during one side bar conference—out of the hearing of the jury—counsel was incredibly disrespectful in accusing the court of inappropriate conduct which is not supported by the record.  At the conclusion of his comments, the court elected not to react in kind, and appropriately inquired as to what questions counsel wished to ask the witness.  Thus, the record reflects nothing of "significant and consistent" conduct that would prejudice the jury against Bailey or his counsel.  Point four is denied.

### *Point Five*

In point five on appeal, Bailey claims the trial court erred in denying his multiple requests for a mistrial due to the improper interaction between the bailiff and the jurors.  Bailey argues the record reflects the bailiff instructed the jury on the law, interacted with and distracted the jury throughout trial, contacted jurors in an unsupervised setting, and instructed the jurors regarding how to ask questions.

### *Standard of Review*

Although Bailey's argument centers upon the bailiff's conduct, he asserts our standard of review is for juror misconduct.  Again, we note a mistrial is a drastic remedy.  *State v. Dunn*, 21 S.W.3d 77, 83 (Mo. App. S.D. 2000).  Where there is an allegation of juror misconduct, the trial court has wide discretion in determining whether to grant a mistrial.  *Id*.  We will not disturb the trial court's ruling in this regard absent an abuse of discretion.  *Id*.  The essential consideration is the extent to which the defendant's right to a fair trial is prejudiced by the alleged misconduct.  *Id*. at 84.

### *Analysis*

12

Bailey is entitled to a fair trial based solely on the evidence presented. *Id.* Juror misconduct must be actually established first and then the burden shifts to the State to show the jurors were not subjected to improper influences as a result of the misconduct. *Id.*

The record reflects some interaction between the jurors and the bailiff. However, although his point on appeal alleges "multiple" incidents in which the bailiff behaved inappropriately and improperly discussed the case with the jurors, his argument is solely focused on the record made when the court questioned witnesses regarding one specific interaction.[4]

A paralegal working with Bailey's counsel testified she observed one of the jurors initiating contact with the bailiff and heard the juror ask if a portion of the video could be replayed. The bailiff responded, "Not until deliberations." The court also questioned the juror involved who confirmed the paralegal's account of the interaction. The juror informed the court he did not believe the communication would prevent him from continuing to be fair and impartial, and he did not believe anyone was telling him how to treat the evidence presented nor how to deliberate. Another juror participating in the communication testified, confirming the accuracy of the juror's account and stating he also did not consider the communication instruction on how to deliberate or suggestion about what evidence was important. He affirmed he could remain fair and did not have any concerns about continuing to serve as a juror. Several remaining jurors observed the interaction and similarly testified regarding their continued impartiality.

Thus, the record reflects that the court carefully questioned the jurors regarding their interaction with the bailiff and its impact. Nothing in the record shows the bailiff discussed the merits of the case, the evidence presented, or gave instruction to the jury regarding how it should deliberate. No information was provided to the jurors outside the evidence and instructions

---

[4] The record does not reflect that Bailey specifically raised any other issue of juror misconduct related to the bailiff.

presented at trial. Therefore, the interaction between the bailiff and jurors did not prejudice Bailey's right to a fair trial. The trial court did not abuse its discretion in refusing to declare a mistrial. Point five is denied.

### *Point Six*

In his sixth and final point, Bailey asserts the trial court erred in allowing the State to strike four of the six African American members of the venire panel in violation of *Batson v. Kentucky*, 106 S.Ct. 1712 (1986) ("*Batson*"), and the court improperly failed to rule on whether the State's reasons for striking the potential jurors were not pretextual or racially motivated.

### *Standard of Review*

We review the trial court's findings on a challenge based on a *Batson* challenge to determine whether they are clearly erroneous. *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010). We defer to the court's decision in this regard because the findings largely depend on the court's evaluation of demeanor and credibility. *Id*. We will only reverse the court's decision if we are left with the definite and firm conviction a mistake has been made. *Id*.

### *Analysis*

In *Batson*, the Court determined "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race . . . ." 106 S.Ct. at 1719. If a defendant raises a challenge based on *Batson*, the State must provide reasonably specific and clear race-neutral explanations for striking the juror. *Bateman*, 318 S.W.3d at 689 (quoting *State v Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992)). Once the State articulates an acceptable reason for the strike, the defendant must show the State's reasons were merely pretextual and the strike was racially motivated. *Id*. The ultimate issue to be decided under *Batson* is whether a defendant has

14

shown pretext.  *Id.* at 690.  Pretext is to be determined by examining the plausibility of the State's explanation in light of the facts and circumstances surrounding the case.  *Id.*

During voir dire, Bailey challenged the State's decision to strike four of the six African American jurors on the venire panel.[5]  In response, the State explained Juror Number 7 "seemed extremely disinterested in the entire voir dire process," and expressed concern with whether he would pay the necessary attention to the evidence in the course of trial.  The State noted "[h]e was slumped, hunched over in his seat most of the day, and paid little attention."

With respect to Juror Number 15, the State noted the potential juror "articulated plenty of things that would cause peremptory strike for the State that would give in an abundance of caution as to her ability to serve as a juror."  While Juror Number 15 was sufficiently rehabilitated not to be stricken for cause, the State was "still troubled by the fact that she believes the State, and perhaps the Defendant, may be hiding evidence.  And that she's kind of persuaded by Netflix and other TV specials on old cases."

Juror Number 24 was also stricken by the State because her nephew was charged and convicted of acting with others in a robbery.  The case at bar was also an acting with another charge, and while she expressed her understanding of the notion of accomplice liability, the State was concerned that "based on her personal experience . . . she's going to expect perhaps more evidence as to this meeting of the minds than say another juror may require.

In addition, the State exercised a peremptory strike of one of the three alternates, who was the only African American among them.  The State explained the alternate's uncle had been the victim of an assault and took the law into his own hands to seek retribution.  The alternate testified his uncle believed the police treated him unfairly because he sought retaliation.

---

[5] The record also reflects these were four of the State's seven total peremptory challenges.

The court found the State's explanations to be sufficiently race-neutral to justify the strikes. More importantly, Bailey did not make any further objection or showing that the explanations were merely pretextual. Based on the record before us, we agree with the trial court's conclusion that the State responded with sufficiently race-neutral explanations, and nothing in the record indicates these explanations were merely pretextual. Point six on appeal is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
Lisa P. Page, Judge

Philip M. Hess, P.J., and
Kurt S. Odenwald, J. concur.

16